# H. M. Williams Motor Co. v. Howard et al.

(Decided Dec. 5, 1933.)

WEBB & WEBB for appellant.
HOLIFIELD, GARDNER & McDONALD for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The appeal is by the plaintiff in an action for $500 damages to its automobile received in a collision with the machine of Mrs. Metta Howard which was being driven by her daughter, Miss Helen Howard, appellees. The company had placed a new Ford V-8 automobile in the possession of Kenneth Wells, a prospective purchaser, to be tried out. On the afternoon of May 20, 1932, in company with a young lady, Wells drove the car out the road from Mayfield on a main highway. He was going west. The entrance and exit of the Country Club is on the north side of the highway and the road is straight for 500 feet east of that point. The driveway is somewhat concealed by vines and shrubbery, but it was several feet from the edge of the paved road to the property line. Wells was familiar with the situation. He testified that according to his estimate he was going thirty-five to forty miles an hour and was within about one hundred feet of the driveway when he saw the appellee's car coming out within eight or ten feet of the payment. He remembers that he began blowing his horn and says that he instinctively released the accelerator and applied the brakes, although he could not say whether he did so with full force. Wells candidly

acknowledges that upon seeing the other car he became excited and that his recollections are not clear as to the immediate occurrences, as it was all so sudden and he was knocked partially unconscious in the accident. He thought the Howard car would stop by the time it got to the middle of the highway. Answering the question whether he tried to stop the machine he was driving in order to avoid a collision, the witness said:

"Yes, my first impulse was to give warning and that car would stop. That passed through my mind and it kept coming on and at the time it had come to the middle of the road I will have room to pass. I do remember then I thought that I must stop, I can't get around. I wouldn't attempt to give any other impression because it would be distorted."

The young lady corroborates Wells' evidence, except that she would not undertake to say how close they were when they first saw the other car. Another witness says he blew his horn when about ninety steps or two hundred and twenty feet away. It is made clear that Wells swerved to the left in an attempt to go in front of the Howard car and that he collided with the front of it with great force on the south side of the center of the highway. Marks on the paving indicated that Wells had applied the brakes while in the middle of the road about one hundred and twenty-two feet from the driveway. Some witnesses put the distance from one hundred and fifty to two hundred feet. All agree that the marks of sliding showed that the brakes were kept on until the collision.

The defendant's evidence is to the effect that before coming out upon the highway Miss Howard stopped and looked up and down the road. Seeing no car or interference, she entered in low speed, and after she had put the car in intermediate and while in the middle of the highway, she first saw the plaintiff's automobile approaching at a rapid speed. While admitting that she was not a good judge, Miss Howard's estimate was that the machine was then one hundred and fifty or two hundred feet away. She did not hear any horn. When the collision occurred she was on the south side of the center of the road with her machine headed east trying to go across into another driveway or the ditch on the south side of the road in order to

get out of the way. Other witnesses substantially corroborate Miss Howard. There was ample room for Wells to have gone behind the Howard machine on the right side of the highway.

The plaintiff's automobile was capable of running as fast as eighty-five miles an hour. Witnesses placed the speed at which Wells approached the point of collision as very fast, some estimates being at from sixty to seventy-five miles an hour. We think the evidence establishes pretty conclusively that he was going at a very rapid speed and much in excess of the statutory limit. The plaintiff's manager testified that an experienced driver (such as Wells was shown to be) going forty miles an hour could have stopped the machine in twenty feet after applying the brakes. At a speed of fifty miles it could be stopped in thirty or forty feet, and at sixty miles around one hundred feet.

The instruction defining the duties of the plaintiff recited that "it was the duty of the driver of plaintiff's automobile on said occasion to drive to his right of the center of said highway whenever possible to do so, to have said automobile under reasonable control, to keep a lookout ahead for other vehicles using the highway," etc. Section 2739g-35, Kentucky Statutes, is as follows:

> "The operator of any vehicle when upon a public highway shall operate such vehicle in a careful manner, with due regard for the safety and convenience of pedestrians and all other vehicles or traffic upon such highway, and shall travel upon the right side of such highway whenever possible, and unless the left side of such highway is clear of all other traffic or obstructions and presents a clear vision for a distance of at least one hundred and fifty feet ahead."

It is argued by the appellant that it was error to omit from the instruction the latter part of this statutory duty as to traveling upon the right side of the highway unless the left side is clear, and the case of Gretton v. Duncan, 238 Ky. 554, 38 S. W. (2d) 448, is relied upon as authority. It was held under the facts of that case that such omission was reversible error. The statute is not perfectly clear, but it seems to require that a driver of an automobile should stay on the right-hand side of the road whenever possible and

*must* stay on that side if there is any traffic or other obstructions within a distance of one hundred and fifty feet, or if he cannot see that the way is clear for at least that distance. The idea is that if one is driving at a reasonable speed and exercising ordinary care under that condition, he can with reason safely count upon nothing interfereing with his continued progress upon the left side of the road. Not only Wells' testimony but all the evidence in the case demonstrates that the road was not clear when he entered the zone of one hundred and fifty feet from the point of collision, and that the left side of the road was then or would immediately be obstructed by the other car. He saw this and evidently undertook to escape the danger and but for his excessive speed could have avoided the accident. The instruction as given seems more favorable to appellant than it would have been with the omitted duty inserted, for it would then have been tantamount to a peremptory instruction. The court under the facts cannot regard it as a prejudicial error to have omitted the provisions from the instruction to which we have referred.

Another ground urged for reversal of the judgment is the rejection of an instruction offered by the plaintiff under the sudden appearance doctrine. It was to the effect that if the jury believed that the driver of defendant's car appeared suddenly upon the highway and placed the plaintiff's car in peril, then that the driver of plaintiff's car had the right to take the wisest course that appeared to him to be necessary to escape the danger. Again, we do not regard failure to give the instruction as prejudicial. The only sudden appearance upon the scene was that of plaintiff's automobile. Its driver saw the other car in ample time to have avoided the collision had he not been remiss in the observance of the law of the road. Big Sandy Bus Line Company v. Williams, 246 Ky. 758, 56 S. W. (2d) 346.

Instruction No. 5 was to the effect that although the jury might believe that the driver of the plaintiff's machine was negligent in failing to exercise the care and conform to the duties outlined, still if the defendants had discovered his peril, or by the exercise of ordinary care could have done so, and could have prevented the accident by the exercise of ordinary care, and that the failure of the defendants under those cir-

cumstances was the proximate cause of the accident, then the jury should find for the plaintiff. The court gave the converse of that instruction offered by the defendants, extending to them also the right to the "last clear chance" doctrine. Appellants criticize this instruction because it was not qualified by the addition "unless you believe as in Instruction No. 5." We do not think the jury could have been misled. A reading of both instructions would demonstrate that one or the other was applicable, and that both of them could not be followed. We cannot conceive that any harm was done the plaintiff on this account.

Perceiving no prejudicial error, the judgment is affirmed.