## Distad et al. v. Aetna Casualty & Surety Company.

(Decided Jan. 12, 1934.)

STEPHENS & STEELY, HAFFORD E. HAY and GLENN H. STEPHENS for appellants.

TYE, SILER, GILLIS & SILER for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Reversing.

On July 31, 1931, the Ætna Casualty & Surety Company issued to K. O. Distad a policy of insurance in consideration of the premium then paid, by which it

agreed to indemnify him in the sum of $2,000 for all loss by burglary, robbery, theft, and larceny, from the premises occupied by the assured as a residence, within one year, and it was specified in the policy that it should apply to all such property as was owned by the assured or by any permanent member of his household. On February 12, 1932, he brought this action upon the policy, charging in substance that, while the policy was in full force on October 1, 1931, he suffered a loss by burglary, theft, or larceny of property contained in his residence at Corbin, Ky., as follows: One diamond bracelet valued at $2,250; one pair ear drops valued at $180.10; one pendant valued at $314.95; one green pin valued at $22; one watch valued at $22.85; one pair amber beads valued at $12; one cameo ring valued at $12; one rezion valued at $37.50—making a total value of $2,851.40.

The company filed answer pleading among other things that on February 11, 1932, the plaintiff was duly adjudged a voluntary bankrupt in the United States District Court for the Eastern District of Kentucky, and had no authority to prosecute the suit. On August 1, 1932, Portia Distad filed in the clerk's office her amended petition in the action, alleging that she was the wife of K. O. Distad and was the owner of all the articles named in the petition and praying judgment in her favor for the loss under the policy. The·plaintiffs at the same time filed a reply to the answer of the defendant. On October 17, 1932, the defendant filed its motion to strike out the amended petition of Portia Distad. Without any ruling upon this motion, the following order was entered on February 22, 1933:

> "By agreement of the parties to this action, and the court being sufficiently advised in relation thereto, it is accordingly ordered by the court that all the affirmative allegations contained in both the amended petition and the reply of said plaintiffs filed herein be and the same are hereby, controverted on the record."

On the same day the case was set for trial on a later day of the term. The case then came on for trial. At the conclusion of all the evidence, the defendant moved the court to instruct the jury peremptorily to return a verdict for it, to which the plaintiff objected. The court overruled the objection, and

peremptorily instructed the jury to find a verdict for the defendant. The plaintiff's petition was dismissed pursuant to the verdict, and the plaintiff appeals.

On the policy there was, among others, this declaration:

> "Q. No burglary, theft or robbery insurance applied for or carried by the assured has been declined or canceled by any company with in the last five years except as herein stated? A. No."

Among other things, the defendant pleaded this clause of the policy, charging that the declaration was false, and, if the truth had been stated, it would not have issued the policy. Briefly stated, the proof for the plaintiff on the trial showed these facts:

K. O. Distad was running a jewelry store in Corbin. He carried burglary insurance on this jewelry store. The policy expired on March 18, 1930. The company renewed it, and gave him sixty days then to pay the premium. He did not have the money to pay it within that time, and took the policy over and surrendered it to the company. He then reinsured the store in another company on a like sixty days' time to pay the premium. He did not have the money to pay this premium, and, when that expired, he surrendered it. He then took out the policy sued on with the Ætna Company. He says that he "paid the earned premiums" on the other two policies, and that they were canceled at his request when he surrendered them.

On the other hand, the agent for the insurance company testified that the policies were canceled for nonpayment of premium. Distad's explanation of the charge was that the Ætna policy was cheaper than the others, and for this reason he did not want to carry the others any longer. The court based the peremptory instruction to the jury upon the ground that these two policies had been canceled; for the appellant it is insisted that, if they were voluntarily surrendered by Distad, this was not a cancellation within the proper meaning of the provision of the policy.

In Rabin v. Central, etc., Association, 116 Kan. 280, 226 P. 764, 765, 38 A. L. R. 26, the rule on the subject was thus stated:

> "Considering question 8 as a whole, it is clear the company wanted such information as would in-

dicate whether or not any company had ever declined to insure the applicant or canceled the policy issued to him or refused to renew a policy previously issued, and, so construed, the question is material. It was of no importance to the company to know whether or not the applicant had voluntarily surrendered a policy, even though technically it might have been marked 'Canceled,' or whether he had let one lapse by reason of nonpayment, for under such circumstances the act would not indicate anything detrimental to the applicant as a risk."

See, also, notes, 38 A. L. R. 30; 1 C. J. p. 423, sec. 65.

The rule is that, "if the language of the policy is ambiguous and susceptible of more than one construction, it should be construed most strongly against the insurer who prepared it." Insurance Co. of N. A. v. Cheathem, 221 Ky. 672, 299 S. W. 545, 547, and authorities cited.

The rule is that, if there is any evidence, the question is for the jury. Under this rule the peremptory instruction should not have been given for the defendant, and the case should have been submitted to the jury on the question whether the previous policies had been voluntarily surrendered by Distad on his paying the insurance for the time each had run, or whether they or either of them were canceled by the company for the nonpayment of the premium.

It is earnestly insisted for the appellee that the plaintiff's petition is insufficient, in that it does not properly set out the terms of the contract of insurance sued on. But there was no demurrer to the petition. The policy was filed with the petition. The answer set up the provisions of the policy which were relied on to defeat the action. The proof was heard on all the questions without objection. By consent of parties, the amended petition and reply were controverted of record, and the question of the insufficiency of the petition was waived, and cannot be relied on now. It is also insisted that the amended petition of Mrs. Distad was never filed by any order of the court, but by a consent order it was taken as controverted of record, and this objection necessarily cannot be made here.

It is also insisted that no proofs of loss were ever submitted to the company before the action was brought.

The company was promptly notified of the loss and sent an agent to see Distad, who took down a full statement from him of the loss; which was submitted to the company. No demand of other proof was ever made. No blanks were furnished. This question likewise comes too late, after trial on the merits.

Appellant insists that no tender of the premium paid was ever made, and that the defendant cannot rely upon the defense asserted without tendering the amount of the premium paid. But under the pleadings, if a judgment is rendered in favor of the defendant on the policy, there should be a judgment for the return of the premium in favor of the plaintiffs. In Knights of Macabees of the World v. Shields, 157 Ky. 35, 162 S. W. 778, 49 L. R. A. (N. S.) 860, this court said:

"We do not think it necessary, when the defense is that the policy was obtained by fraud, that the company should, with its defense, make a tender of the premiums received, but if on the trial of the case there is a judgment for the company upon the ground that the policy was procured by fraud or misrepresentation, and therefore void from the beginning, there should also be a judgment, without additional pleadings, against the company in favor of the beneficiary in the policy for the amount of the premiums paid to the company as shown by the pleadings and evidence, with interest thereon from the date of these payments."

Distad produced on the trial a paper which he testified was a copy of the contract under which the bracelet was bought, and that the contract was lost. But he did not testify when or how it was lost or that the paper he produced was a true copy of the original, and there was no evidence showing who made the copy or from what it was made. In this condition of the evidence, the court properly refused to allow the copy read. Other questions are reserved.

Mr. and Mrs. Distad were the plaintiffs in the action. He testified first, and then she was offered as a witness. By subsection 3 of section 606 of the Civil Code of Practice no person shall testify for himself in chief in an ordinary action after introducing other testimony for himself in chief. Mrs. Distad, under the pleadings and admitted facts, was the real plaintiff in the action. She was the only person entitled to a recovery, and, while her husband was properly joined as

plaintiff, as the contract was made with him, she, being the real plaintiff, should be introduced first, in chief, before any other witness in chief.

By subsection 1 of section 606, in actions which might have been brought by or against the wife if she had been unmarried, either she or her husband may testify, but not both, except that, when a husband or wife is acting as agent for his or her consort, either of them may testify as to any matter connected with such agency. While either may testify as to such a matter, both may not testify as to the same matter. The statute must be given a liberal construction, and the husband should be permitted to testify for his wife as to any transactions he conducted for her or in her interest, for it is a part of the duty of a husband to look after his wife's interests and protect them. But both husband and wife may not testify as to facts that occur when both are present. Rose v. Monarch, 150 Ky. 129, 150 S. W. 56, 42 L. R. A. (N. S.) 660, 667; Barr v. Gilmour, 204 Ky. 582, 265 S. W. 6.

Judgment reversed, and cause remanded for a new trial and further proceedings consistent herewith.