## Taylor-Green Gas Co. v. Stearman et al.
### (Decided Oct. 1, 1935.)

O. B. BERTRAM for appellant.

MILBY, HENDERSON & MILBY and J. R. SANDERS for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Taylor-Green Gas Company, hereinafter referred to as the company, furnishes natural gas to the citizens of Campbellsville and to such citizens of Taylor county outside of Campbellsville as construct service lines from their dwellings to its pipe line. Appellee, T. M. Stearman, whose residence was located about one mile from the corporate limits of Campbellsville, and 300 feet from appellant's pipe line, filed a written application with appellant for gas on May 2, 1931. He constructed a service line from his residence to the pipe line, and the contract between him and the company required him to furnish the necessary regulators and safety appliances required to reduce the pressure from the maximum pressure on the company's main to eight ounces. The appellant installed, owned, and maintained the meter which was attached to the service line in the basement of Stearman's house. The house and its contents burned on May 24, 1934, and T. M. Stearman and Annie L. Stearman, his wife, brought this action to recover the sum of $1,743, the value of the house and its contents alleged to have been destroyed by fire as a result of the negligence of the company's agents and employees. On the trial of the case, the plaintiffs recovered a judgment of $700, and the defendant has appealed.

The specific act of negligence to which plaintiffs' evidence was directed was the alleged improper installation of a meter in the Stearman home on the day before the fire was discovered. About 5 o'clock in the

afternoon of May 23, 1934, I. C. Russell, an employee of the company, went to the Stearman home to remove the old meter which had ceased to register, and to install a new one. When he removed the old meter, he found that the top gasket was stuck to the nipple that went into the pipe. He installed the other meter, turned on the gas, and tested it for leaks by striking a match. There was a leak at the top of the meter, and Russell fanned out the blaze with his cap, cut off the gas, put in a new gasket, screwed down the unions, and tested again with a match. He found no indication then of a leak at that point. About 10 o'clock on the following morning, Mrs. Stearman, who was at a mill about 40 or 50 feet from the house, heard a roaring sound. When she went to the house, smoke was escaping through the floor. She opened the cellar door and saw a blaze at the top of the meter, which was located about 12 inches under the floor. She called her brother and uncle who were nearby, and they attempted to cut off the gas and put out the fire, but were unsuccessful in their efforts. The company insists that the appellees failed to introduce any evidence tending to show negligence on its part, which was connected with the injury complained of, and that the origin of the fire was left in the realm of surmise and speculation, which warranted a directed verdict in the defendant's favor.

It is argued that the facts bring the case within the rule that, where the question is one of negligence or no negligence and the evidence is equally consistent with either view, the existence or nonexistence of negligence, the court should not submit the case to the jury. There was positive testimony, however, that the fire originated at the meter which was owned and controlled by the company, and which had been installed by one of its employees a few hours before the fire was discovered. The meter leaked after it was set and the employee turned off the gas, put in a new gasket, screwed down the unions, turned on the gas, and again tested the meter for leaks by striking a match. He failed to observe any blaze, and concluded there was no leak. There was proof to the effect that the proper practice is to turn off the gas after such a test, since a small blaze might escape detection. It is argued that, if the meter had been left burning, the gasket, being of rubber, would have burned out quickly and the blaze would have increased to such an extent that it would have set the

house on fire within a few minutes; but there was proof to the effect that the blaze, if very small, would easily escape detection and several hours would pass before the rubber in the gasket burned sufficiently to increase the flow of gas materially. There was sufficient proof, though of a circumstantial nature, to support appellees' theory as to how the fire occurred, and the court properly submitted the question of appellant's negligence to the jury. There was evidence that no one was in the basement where the meter was located after appellant's employee tested it and before the fire was discovered, and that he failed to follow the customary and proper practice in testing meters for leaks, in that he failed to turn off the gas after striking a match, although no blaze indicating a leak was observed by him.

"The sole test of the right of the plaintiff to go to the jury in negligence cases is, was there evidence or reasonable inference therefrom to show that the defendant or defendants committed the act or acts of negligence complained of, and that the plaintiff was injured thereby? When there is sufficient evidence of this nature, then the court is not authorized to take the case from the jury, although the weight of all the evidence introduced may tend to show that the defendant did not commit the negligence complained of, or that the plaintiff was not injured thereby, or both." Louisville Gas & Electric Co. v. Nall, 178 Ky. 33, 198 S. W. 745, 751.

T. M. Stearman was introduced as a witness after his wife had testified, and his testimony was objected to on the ground that he was precluded from testifying after his wife had been introduced as a witness. The proof as to the ownership of the property is not clear, but it appears that the house was owned by T. M. Stearman and that some of the personal property therein belonged to him and some to his wife. He had been employed in Louisville for more than two months, and was absent from his home when the fire occurred. During his absence, his wife was in charge of the property and operated a mill and filling station nearby owned by her husband, and was clearly acting as his agent.

Under section 606 of the Civil Code of Practice, neither the husband nor his wife is permitted to testify for the other except in certain actions. An exception to the general exclusions is that, when a husband or wife

is acting as agent for his or her consort, either of them may testify as to any matter connected with such an agency. Under this exception, when either spouse is acting as agent for the other, each may testify as to facts of which the other has no knowledge, but both may not testify as to facts that occurred when both were present. Logsden v. Stern, 117 Ky. 217, 77 S. W. 927, 25 Ky. Law Rep. 1649; Edwards v. Citizens' Savings Bank of Paducah, 244 Ky. 508, 51 S. W. (2d) 661.

Annie L. Stearman testified concerning the circumstances surrounding the fire and as to the value of certain personal property claimed by her. Her husband testified in regard to none of these matters, but only as to the value of the house and of certain personal property owned by him. The court did not submit to the jury the question of damages as to the personal property owned by T. M. Stearman on the ground that this property was not referred to in the petition. Under the facts of the case, the testimony of the husband was competent.

In instruction No. 5, the jury was told that it could not find for the plaintiffs if it believed from the evidence that they, or either of them, removed the regulator from the service pipe and operated same in that condition without the knowledge or consent of the defendant company. It is argued that this instruction is erroneous, in that it failed to require the jury to believe that the company had given its written consent to the removal of the regulator. The proof shows that the manager of the company was verbally notified of the removal of the regulator and that he consented thereto. There is nothing in the contract requiring the written consent of the company. Other minor criticisms of the instructions are made, but we have read them carefully, and conclude that they fairly presented the issues involved.

The judgment is affirmed.