Argued February 18; reversed April 7, 1936

# PRICE *v.* UNITED PACIFIC CASUALTY INSURANCE CO.

### (56 P. (2d) 116)

*Randall S. Jones,* of Portland (E. L. McDougal and Lawrence Lister, both of Portland, on the brief), for appellant.

*W. C. Winslow,* of Salem, for respondent.

ROSSMAN, J. The defendant admits that on February 19, 1933, it executed the policy of insurance described in the complaint. The material parts of the policy are:

"To indemnify the assured for all loss by burglary, robbery, theft or larceny of any of the property insured hereunder, from within the premises occupied by the assured and as hereinafter defined, committed by a guest or by any domestic servant or other employee of the assured or by any person whose property is not covered hereby; * * * It is agreed that the insurance * * * shall apply to all such property owned by the assured or by any permanent member of the household of the assured who does not pay board or rent, or by a relative of the assured permanently residing with him * * *."

The policy describes the premises as No. 444 North Cottage Street, Salem, being the home of the plaintiff.

The complaint alleged that "there was stolen from said residence * * * one diamond ring then and there the personal property of plaintiff's wife who was at said time occupying said premises with plaintiff as a member of plaintiff's household". The answer admitted that the ring was the property of plaintiff's wife. At the time of the purported theft the plaintiff

and his wife were estranged. See *Price v. Price,* 149 Or. 499 (41 P. (2d) 450). Mrs. Price, after being absent from plaintiff's home for many months, returned June 5, 1933, but left again on July 25 of the same year. If she later returned, the witnesses did not mention the fact. She testified that in June she placed her jewel box containing the ring involved in this action in a dresser drawer, and that on July 25 when she left she took the jewel box with her. According to her testimony, she opened the box while driving away from the house and then discovered that the ring was not in the box. She swore that she had seen no evidence about the jewel box, the dresser or the room that indicated ''that things had been disturbed'', She was asked, ''And you don't know what became of it?'' to which she replied, ''No, sir''.

From the time that Mrs. Price returned June 5 until she left July 25 there had resided in the home besides herself and Mr. Price the latter's two sons, Jack and Stanley, and a servant. It is clear from Mrs. Price's testimony that she did not believe that the ring had been stolen by someone who had unlawfully entered the home. When asked whether she looked for any evidence of an unlawful entry or of evidence that the dresser had been disturbed, she replied: ''I never thought to look for any evidence when there was nothing to indicate it.'' She did not notify the police of the disappearance. When asked, ''Why didn't you notify the police?'' she replied, ''Well, I thought it might turn up * * * well, I thought it might turn up eventually. I didn't feel that it was probably—exactly, taken away from the home. * * * It had disappeared, but as far as a burglar was concerned, I didn't just feel a burglar had come in and taken it or they would

have taken all the jewelry. * * * I didn't think a burglar had come in and taken it."

The first assignment of error presents the issue whether the plaintiff had an insurable interest in the ring which entitled him to maintain this action.

It will be observed that the sole plaintiff is Mr. Price. His wife did not join him in bringing this action. He seeks to recover the value of the ring for his own purse. We quote from the complaint: "Plaintiff has been and is damaged in the sum of $500". There is no averment in the complaint that the action was instituted on behalf of the wife. It seems fair to infer from the averments of the complaint that the wife did not request the plaintiff to institute this action. It will be recalled that she discovered the disappearance on July 25, 1933. The complaint alleges: "Plaintiff herein did not learn of said larceny or burglary until December, 1933."

■ This court has many times held that one who brings an action upon a policy of insurance must allege and prove that he possesses an insurable interest in the property described in the policy. It is unnecessary to cite the decisions. The same principle applies to actions upon policies of burglary and theft insurance: *O'Neill v. Queen Insurance Co.*, 230 Mass. 269 (119 N. E. 678); *Windsor Mfg. Co. v. Globe & Rutgers Insurance Co.*, 277 Pa. 374 (121 Atl. 328); *Pearlman v. Metropolitan Surety Co.*, 127 App. Div. 539 (111 N. Y. S. 882); *Hirsch v. City of N. Y. Insurance Co.*, 218 Mo. App. 673 (267 S. W. 51).

In *Oatman v. Bankers Fire Relief Ass'n*, 66 Or. 388 (133 P. 1183, 134 P. 1033), which involved a policy of fire insurance upon both real and personal property, the decision of this court states:

"In this State a husband has no insurable interest in his wife's property."

Some courts have recognized an insurable interest in the husband in his wife's personal property, such as household furniture, where the two are in possession and enjoyment of the personalty, since he thereby derives an advantage from the property and will sustain a loss if it is destroyed or stolen: 26 C. J., Fire Insurance, p. 35, § 21, and annotation, 68 A. L. R. p. 368. But the plaintiff does not contend that he had any beneficial interest in this ring. It was not in his possession and its destruction or theft would not terminate any advantage which he had enjoyed previously.

■ The plaintiff seems to believe that an insurable interest in the property of another can be created through a contract effected between the insured and the insurer. That, however, is not the law. Such a contract would be a mere wagering agreement. An insurable interest is created only through ownership, rightful possession, acquisition of a lien, etc.

Manifestly, the policy was intended for the protection, not only of Mr. Price but of others. The others are "any permanent member of the household of the assured who * * *." Since the contracting parties could not foresee at the time the policy was written who might become permanent members of the household, they described these additional assureds by using the language just quoted. Those who later may acquire an insurable interest and whose present identities are unknown, are often described in a manner similar to the above general clause of this policy. For instance, not infrequently warehousemen obtain policies, not only for their own protection but also for the

benefit of others storing property in their premises. Marine insurance policies not infrequently name the carrier as the assured and then provide protection "on account of whom it may concern". Likewise, a policy of insurance, besides naming an individual as the assured, may also protect the interest of any one whose property is held in trust by the assured. Policies frequently provide protection for the owner and an undisclosed mortgagee as his interest may appear. In such instances, it is generally held that not only may the assured maintain an action to recover his loss but all other individuals who fall within the general classification may also maintain actions in their individual names and recover the losses which they have sustained: 14 R. C. L. Insurance, p. 1427, §§ 586 and 587; Richards on the Law of Insurance (4th Ed.), § 499; *Exton & Co. v. Home Fire & Marine Insurance Co.*, 249 N. Y. 258 (164 N. E. 43, 61 A. L. R. 718); and especially the annotation in the volume last cited.

In *Smolensky v. Mass. Bonding & Ins. Co.*, 120 Misc. Rep. 346 (198 N. Y. Sup. 376), where the provisions of the policy designating the parties protected by its covenants were the same as those now before us, the "complaint alleged that the plaintiff is the wife of the assured, that the property stolen was hers, that it was in the building in question, and that she has complied with all of the provisions of the policy." The court held that she was the proper party plaintiff and sustained a judgment in her favor. In *Distad v. Aetna Casualty & Surety Co.*, 252 Ky. 326 (67 S. W. (2d) 24), the provisions of the policy describing those protected were the same as those now before us. The husband was designated as "the Assured". He and his wife were the plaintiffs, but the complaint alleged that

the wife was the owner of the property which was stolen. We now quote from the decision:

"Mr. and Mrs. Distad were the plaintiffs in the action. He testified first, and then she was offered as a witness. By subsection 3 of section 606 of the Civil Code of Practice no person shall testify for himself in chief in an ordinary action after introducing other testimony for himself in chief. Mrs. Distad, under the pleadings and admitted facts, was the real plaintiff in the action. She was the only person entitled to a recovery, and, while her husband was properly joined as plaintiff, as the contract was made with him, she, being the real plaintiff, should be introduced first, in chief, before any other witness in chief."

In *Krickl v. Ocean Accident & Guarantee Corporation,* 82 Misc. Rep. 404 (143 N. Y. Sup. 750), the court held that the husband was the proper party plaintiff, although the stolen property belonged to his wife, stating "the terms of the policy justified this ruling". Neither the terms of the policy nor the averments of the complaint are disclosed by the decision. In *Fleischer v. Maryland Casualty Co.,* 108 Pa. Sup. Ct. 461 (164 Atl. 824), a similar result was reached. In *Lewis v. Continental Casualty Co.,* 135 Or. 170 (295 P. 450), we sustained a judgment in favor of the husband although the stolen property belonged to his wife. The complaint rendered it reasonably certain that the action was instituted for the benefit of the wife, and the latter testified in support of the action, thereby, through her acquiescence, ratifying her husband's act in instituting the action. The defendant did not contest the husband's right to maintain the action, but merely denied his averment that the property had been stolen.

■ It is our belief that Mrs. Price could have adopted the indemnity provisions of the policy which her hus-

band had procured for her and all others described in the general clause defining the beneficiaries, and, further, that she could have maintained an action in her own name if she believed that the defendant was liable.

■ It follows from the above that, in our opinion, the complaint does not allege a cause of action in favor of Mr. Price, and that the evidence does not disclose one in his favor. He was not the owner of the ring, and had no insurable interest in it. Neither his complaint, the evidence, nor his brief, contains any indication that this action is being maintained for the benefit of Mrs. Price, the owner of the ring. The parties are estranged, and it is evident that the plaintiff seeks his own enrichment, and not Mrs. Price's indemnity. It is obvious from Mrs. Price's testimony that she does not believe a loss has occurred for which the defendant is liable. Hence, she could not have maintained an action against the defendant for her own avail.

Being of the above opinion, it follows that the judgment of the circuit court must be reversed.

CAMPBELL, C. J., KELLY and RAND, JJ., concur.