## Pedigo v. Osborne.

June 9, 1939.

J. S. Sandusky, Judge.

B. J. Bethurum and E. Bertram for appellant.

Duncan & Duncan for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

On April 22, 1937, appellant's truck, operated by Bruce Taylor, an employee, was going south on Highway No. 90, toward Albany. Mr. Osborne was driving a sedan in an opposite direction, going toward Monticello. At a point on the highway, about five miles from Monticello, the car and truck came into what is described as a "head on collision," and as a result both were damaged.

In September 1937 appellant filed suit against appellee, alleging that the collision was occasioned by the reckless, careless and negligent operation of the car by

the owner, Mr. Osborne. He sought recovery in the sum of $500 for damages to his truck.

Appellee denied the allegations of the petition, and alleged contributory negligence by Taylor in the operation of Pedigo's truck, which affirmative matter was controverted by reply. An amended answer was filed, and reply thereto, but the court correctly sustained demurrer to the answer, and the reply was withdrawn, thus leaving the issues formed by the pleadings first above mentioned.

The cause was heard, and after proof and instructions, the jury returned a verdict in favor of Osborne, and Pedigo in prosecuting appeal insists that the verdict is flagrantly against the evidence and that the court erred in giving instruction No. 2. The first ground requires us to review some of the evidence as to the manner of the accident.

Bruce Taylor, who was driving Pedigo's truck at the time of the accident, could not be located at the time of the trial, hence did not testify. Mr. Osborne testified, and we shall give his version of the occurrence, since such recital will permit us to determine the controversy.

Mr. Osborne, accompanied by three other persons, was traveling northwardly toward Monticello. The accident happened shortly after dark. A half mile below the point where it occurred, Osborne had driven up behind Massingale's truck; "blew for the road," but the driver of the truck failed to respond to his signal, and he followed the truck until there was a straight stretch of road, where the truck pulled over and Osborne started around. He says:

"My impression was that James started up a race with me, and I drove some little distance at the side of the * * * truck; we were evidently driving at the same rate of speed, and right out in front of us at curve was a car coming around up the hill; we then approached the curve going from down toward Albany. * * * As he (Taylor) came around the curve, we couldn't see the reflection of his light because we were *below the hill*. After we come up over the hill the light flashed and I was in the act of passing this other truck, and had been for some little distance. My first impression was to step on the brake and stop my car on *his side*. I

was on the left side of the road and swung back behind the truck. I applied my foot to the brake. I didn't know whether the truck was loaded or empty. I stepped on the gas; knew the car couldn't get up the speed. I was making around thirty-five miles an hour, and attempting to pass this truck. I thought I could get around him and avoid a collision, and I had passed this truck completely, but had not had time to swing all the way over. I was in the act of swinging the car, which was cleared of the truck, when this truck approached from the front and hit me. I made the remark that the man had better pulled over one foot; he had plenty of room; had that much black top; that much space that wasn't grassed; that much that wasn't wet, perfectly dry, that much space, making a total of four feet without taking the ditch or endangering his car. I said, 'you have this much room on this side,' and he says, 'I was on my side of the road.' ''

When the impact came the Osborne car rolled over, or partly so and came to a stop about 90 feet from the point of collision on the left side of the road, in front of the Massingale truck, but to its left. Mr. Osborne says when he turned his car to the left ''to pass the Massingale truck,'' he could see 250 feet down the road, and saw no lights or indication of a car coming from the opposite direction; that after he turned, in order to pass the truck, his car and the truck traveled side by side for a distance of, ''I would say about 50 feet.'' He says the reason he could not pass Massingale's truck sooner was because they were both driving at about the same rate of speed. ''When I stepped on the gas, I had the impression he also stepped on the gas. We were driving side by side when the other car came in view.''

Appellee says that after the accident he told Pedigo and others that ''the only way I was in fault was by attempting to pass this car; that it was probably my fault in that respect; that it was his fault he didn't give me any consideration by keeping half of *that* road. He could have turned to his right a foot or two and not have been in the ditch, and avoided the accident.''

On cross-examination he says when he and the racing truck had traveled the 50 feet, side by side, he first saw the approaching truck, at a distance of 150 feet; the collision came quickly after he saw it. Mr. Osborne ad-

mits that the road was "practically straight, and pretty level."

Everett Alexander, and the others who were riding with Osborne, testified substantially as did appellee. One said that Mr. Osborne tried to get by the truck "about a mile off" before he finally came alongside the truck, then the truck and Osborne's car were driving at about the same speed. As Mr. Osborne turned to the left to pass the Massingale truck, witness could see down the road between 100 to 200 feet. This witness indicates that he did not see the Pedigo truck until just before the impact, when the truck came up out of a "little rise and hit it." He says the Pedigo truck was on its right side, and Mr. Osborne was on the left side, "fixing to go over to the right." The others testified substantially as had Osborne.

We shall not give in detail plaintiff's testimony, but may safely say that there was no contradiction of appellee's proof. As said, the Pedigo truck driver did not testify, but two or three persons who were riding in the Massingale truck, the one which appellee was passing, and who were in a position to see the accident, did testify.

Aside from the version given by appellee, it may be said that the evidence showed that at the time appellee had gotten partly around the Massingale truck, Pedigo's truck was at the most not more than 100 feet from the Massingale truck; was then traveling at a reasonable speed, on the right side of the road, and was so traveling when the impact came. It was shown that the lights on the truck were burning. It is clear from the evidence that while the collision occurred on a straightaway, Pedigo's truck had just come from around a slight curve, and gotten over a slight rise in the road. It appears from the proof on both sides that Mr. Osborne could not have had a clear vision at this point for a distance of 150 feet. Kentucky Statutes 1938, Section 2739g-35.

However, it is unnecessary to discuss the meritorious contention that the verdict is flagrantly against the evidence, since we have concluded that the court committed error, much to the prejudice of the plaintiff in giving instructions, and more particularly in giving instruction No. 2, offered by defendant over plaintiff's objection.

The plaintiff offered five instructions. No. 1 in apt language defined the duties of the driver of the defendant's car at the time and place of the accident; No. 3 fixed the measure of damages; No. 4 defined "ordinary care," and No. 5 told the jury:

> "You are further instructed that if you shall believe from the evidence that the plaintiff on the occasion mentioned in the evidence was himself negligent, and that his said negligence contributed to the said collision and injury to the plaintiff's truck to such an extent that but for *it* said collision would not have occurred, and his said truck would not have been injured, then you will find for defendant."

It is at once noted that this instruction in no wise undertakes to define the duties of plaintiff in the operation of his automobile. The jury had nothing to guide it in determining what would constitute or amount to the proper or improper handling of the car. The instruction should have defined the duties of the driver of plaintiff's car, with the further instruction that if plaintiff failed to observe such duties or any one of them, and that failure contributed to the injury to plaintiff's car, they should find for the defendant.

Instruction No. 2, as given at the instance of the defendant, was erroneous. Plaintiff offered an instruction No. 2, which was objected to by defendant, and the court declined to give it. For some reason or other the offered and rejected instruction is not copied into the transcript, consequently we cannot say whether or not it correctly presented the law as to the duties of the plaintiff, if indeed it had reference, as no doubt was the case, to his duties in operating his car at the time, as fixed by applicable statutes. The instruction complained of reads:

> "The court further instructs the jury that if they should believe from the evidence that at the time and place of said collision the driver of plaintiff's truck had sufficient space at his right that he could with reasonable safety avoid colliding with and striking the defendant's automobile, and that but for the failure of the driver of the plaintiff's truck to drive further to the right, if he could have done so with reasonable safety, said collision would not

have occurred, then the law is for the defendant and you will so find."

The instruction had the effect of modifying instruction No. 5, in fact it was such as to reduce the care to be exercised by the driver of the Pedigo truck to the adoption of one means only, of avoiding the collision "if he could have done so with reasonable safety." That is, if the truck driver had "sufficient space to the right," then it was his duty to "drive further to the right," and thus have prevented the accident.

This instruction apparently was an attempt by the court to embody the idea of what is sometimes called the "emergency" or "last clear chance" rule, or the doctrine of discovered peril, which rule is founded on the humane idea that though one may be in fault, if his peril be realized by another, or through culpable carelessness, he is oblivious to it, and then has an opportunity by the exercise of due care to avert the accident, he should do so, and his failure to embrace the final chance of avoiding a collision, makes him responsible for the consequences, and the negligence of the other actor becomes immaterial. Robinson Transfer Company v. Turner, 244 Ky. 181, 50 S. W. (2d) 546. See also McGraw v. Ayers, 248 Ky. 166, 58 S. W. (2d) 378. The plea here was of general negligence.

If the facts as developed in this case authorized the giving of such instruction, then it is observable at first glance that the one given was erroneous, and undoubtedly prejudicial to the rights of the plaintiff. The question as to whether or not plaintiff's driver discovered or could have discovered defendant's perilous position, in which he placed himself, without doubt by his own careless driving, in time to have averted the danger, was not left open to the jury, since the court required him under the given instruction to "drive further to the right," whether the peril of Osborne was, or could have been, discovered.

Several witnesses say that the collision happened very quickly after defendant undertook to speed up and pass, and had passed the Massingale truck. Most of the witnesses, particularly those in the Massingale truck, and who were in a better position to see what happened, say that Osborne was just in the act of starting to go around when the truck and sedan collided, but Mr. Osborne testified that he had time to debate in his own

mind whether he would shut off the gas and drop back, or to step on the gas and try to get in front of the Massingale truck. There is slightly more than a scintilla of evidence that Taylor might have, under the last clear chance rule, avoided the accident. Although it is clear that Osborne was guilty of negligence, it was the duty of the driver of the Pedigo car to use ordinary care to discover the peril of appellee and to use such means as he had at his command to avoid the collision. Lieberman v. McLaughlin, 233 Ky. 763, 26 S. W. (2d) 753.

Because of the erroneous and prejudicial instruction given at the instance of defendant, over the objection of the plaintiff, the case must be reversed for a new trial consistent with this opinion.

Judgment reversed.