## Brooks v. New Albany & L. Electric Ry. Corporation.

Oct. 20, 1939.

158

Huggins & Hogan and Robert E. Hogan for appellant.

Bruce & Bullitt, Eugene Cochran and John E. Tarrent for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

On October 8, 1938, appellant filed her petition alleging that on June 24, 1937, she and her husband, he driving her car, parked on Liberty, between Fourth and Fifth Streets in Louisville, at a point near the *east* curb of Liberty Street; that as he was driving out, one of appellee's street cars, carelessly and negligently operated by its servants, collided with her car, causing her to suffer painful and permanent injuries; that she was required to pay doctor's, medical and nurse's bills, and that her automobile was damaged. She prayed judgment for $2,500 for pain and suffering; $500 for past paid and future medical bills; $150 for damages to her car and $150 which she had been unable to earn in her theretofore usual employment.

Demurrer to her pleading was overruled, and appellee denied the allegations of the petition and alleged that the accident and injury were due to the negligence

of appellant and her husband, the driver of the car. To this answer there was filed a controverting reply, and later appellee amended its answer, alleging that at the time of the accident appellee's husband was acting as her agent, and that the collision was due to his negligence. In reply appellant denied the latter allegation, but did not deny agency.

At the conclusion of appellant's and all the evidence, appellee moved for a peremptory; the court overruling in each instance. Upon submission the jury found for defendant and judgment entered, from which plaintiff appeals.

While there were six or more grounds set up in support of motion for a new trial; those now urged for reversal are:

"(1) The court erred in refusing to permit Mrs. Brooks to testify.

"(2) The court should have instructed on appellee's duty to give warning of approach.

"(3) The court erred in not giving a requested instruction on 'last clear chance.'"

Looking to the first alleged error, the record shows that before statement of the case had been made counsel for appellant moved and stated:

"In view of the fact that defendant has in its amended answer set out affirmatively that the husband * * * was acting as the agent of plaintiff, * * * and that plaintiff has not denied the allegation, the plaintiff at this time moves the court for the privilege of introducing both plaintiff and her husband as witnesses, on the idea that the plaintiff will not attempt to use the husband as a witness in her behalf to testify to any fact to which she testifies; nor will plaintiff, if both parties are permitted to testify, attempt to testify as to the manner in which the accident happened. In other words, the plaintiff moves the court to be permitted to introduce the husband as a witness to show the manner in which the accident occurred, and plaintiff to show the nature and extent of her injuries."

Opposing counsel objected saying:

"In the first place we wish to make an opening statement, and the motion has been made and wit-

nesses are being offered before counsel for defendant has had opportunity to make opening statement. Secondly, I don't know of any procedure to offer to introduce evidence before the case is being tried.

"Court: Show that the Court will permit either the husband or wife to testify, but not both, and that the motion to permit both to be offered as witnesses will be overruled with exceptions to plaintiff."

After the husband was placed on the stand and had begun to testify as to the manner of accident, the court asked: "Are you going to offer this witness, entirely, and not the wife?" Counsel for appellant replied, "Yes sir." The court said:

"In other words you have elected to offer the witness here. A. Yes sir, in view of the court's ruling that both may not testify, we have elected to have him testify."

It is said in the brief that failure to deny the agency as plead by appellant was for the purpose of permitting both the husband and wife to testify in the manner set out in the colloquy. The wife was not offered as a witness. Proper procedure would have required her to be tendered, and upon the court's refusal counsel should have made avowals. Murphy v. Phelps, 241 Ky. 339, 43 S. W. (2d) 1010; Allender v. Browning's Adm'x, 242 Ky. 273, 46 S. W. (2d) 116.

However, there was proof of the manner of her injury, proof of her injury and suffering; of the amount of her medical bills and damage to her car, sufficient at least, as the court below viewed the situation, to permit the court to give, which he did, instructions fully covering the measure of damages alleged, except in one particular, and since it is obvious that the jury decided against her on the merit of her charge of negligence, no substantial prejudicial error was committed.

As will be later observed the case is to be reversed, we feel constrained to say that the husband and wife should have been allowed to testify in the manner proposed by counsel. Section 606, Subsection 1, Civil Code of Practice (Agency); Taylor-Green Gas Company v. Stearman, 262 Ky. 61, 89 S. W. (2d) 305; Distad v. Aetna C. & S. Co., 252 Ky. 326, 67 S. W. (2d) 24. Other grounds urged for reversal require a brief summary of the testimony.

The husband testified that about 4:30 in the afternoon of the day of the accident, accompanied by his wife, he parked the car on the north side of Liberty Street at a point "between 100 and 150 feet west of Fourth Street." They did some shopping, and returned in a short time to the automobile. He testifies:

"When I got in the car I looked around and seen a light was red, and a street car (admittedly appellee's) was standing at the line. I started my motor and started to pull out and looked out again, and I was about—my left-hand front wheel was practically on the north rail of the *south* bound street car track, and I looked around and seen the car was about 20 to 30 feet from me. I never heard no sound at all, and by the time I got out with my left front wheel on the south rail of the west bound street car, and my left rear wheel was on the north rail of the west bound street car track, why, there was a crash and he hit my car right at the rear (left) fender of the car. * * * After the street car hit me it drug me about five feet into a parked car in front of my car, and then drug the two cars about five feet."

Upon being pressed, witness said that when he looked back as he started out from the curb, the street car was still standing on the east side of Fourth Street waiting for the light, and further that at the time his left front wheel was crossing the north rail of the car track he judged that the space between his car and the street car was about 25 feet, and the street car he thought was making about 25 miles per hour; that the motorman did not sound his bell, and "did not seem as though he slackened his speed."

George Madison was the owner and driver of the car parked in front of the Brooks' car. He says he pulled in first, and Brooks pulled in right behind him. He knew little of the manner of the accident; he was sitting in his car at the time waiting for his wife. He says the first he knew of any trouble was when the impact occurred. Madison, to some extent contradicts Brooks in regard to the distance his car was pushed by the impact. His car was, as the witness says, "hit into the side and knocked into the curbing." He did not know whether the street car operator sounded his gong or not, since he was "not paying any attention."

The foregoing is substantially the testimony on which appellant bases her claim for damages. For appellee it was shown that the car which the motorman was operating at the time (with a heavy trailer attached) had made its trip from New Albany to the station in Louisville. The exit from the station is on the north side of Liberty Street, and nearer to Third Street. This car came out of the station and stopped on the east side of Fourth Street to pick up passengers, but before it could cross Fourth the red light blocked it, and the motorman waited for clearance. When the light changed he started across Fourth Street and, "picked up a little speed, and when we got within about 20 feet of the point where the Brooks' car was parked Brooks suddenly pulled the front end of it on the north rail. He pulled out just in one pull."

The motorman says he sounded his bell, put on his air brakes, and sanded the track; that after the impact the street car did not go more than three feet, and pushed the Brooks' car into the car in front of him. He describes the operation of his air brake, which he says by some connecting mechanism works on the trailer. He said when he put on the brake he was going about 15 miles per hour, and was positive that the driver of the Brooks' car did not give any sign indicating an intention to pull from the curb, and at this point it may be noted that Mr. Brooks did not assert that he had given any such signal.

Witness was shown a drawing and from that explained that Brooks' car was parked about 60 feet from the front end of the Bon Ton Store, and that the rear end of the lead car had not cleared Fourth Street when the front end was about 20 feet from the Brooks' car. In other words, according to the map, it is 130 feet from the east cross-walk to the point where the Brooks' car started to come out.

The witness is very positive that the minute he saw the Brooks' car he rang his bell, applied his brakes, and turned on the sand. The motorman's testimony as to the manner of the accident and his movements is corroborated by several passengers who were riding on the front or lead car.

We are of the opinion that appellant's contention that the court erred in failing to give the proferred instruction, or to incorporate same in the given instruc-

tion, that it was the duty of the motorman to give signal of the approach of the street car is not meritorious under the facts of this case. In Mullins v. C., N. & C. Railway Company, 253 Ky. 156, 68 S. W. (2d) 790, 791, we wrote:

"It was the duty of the motorman to keep a lookout ahead for pedestrians using the street so as to give them timely warning of the car's approach, if necessary to apprise those who were unaware of its approach, or could not leave the track in time to escape injury * * *."

In Hauser v. Public Service Company of Indiana, 271 Ky. 206, 111 S. W. (2d) 657, 659, we said:

"We have also ruled that the duty to sound the gong is for the protection of those using cross streets, and those who are so placed that they do not see the approaching [street] car." Louisville & Nashville Railroad Company v. Bedford's Adm'r, 203 Ky. 583, 262 S. W. 941.

The situation as presented by the proof leads to the conclusion that it was not negligence on the part of the motorman to fail to warn Brooks of the approach of his car, nor to so warn him until he realized that Brooks was about to so move his car as to interfere with the movement of the street car over its tracks, or it be of danger to the Brooks' car and its passengers.

It is true that Brooks does not say that he saw the car approaching before he attempted to turn on to the north rail. However, he saw the street car standing, blocked by a red light, and again after he started his motor, when he makes no mention of the red light. He knew that it was a New Albany car, about to proceed westwardly, and exercise of common judgment would have told him the car would move as soon as clearance was had, and it was not required of the motorman to signal that he was going forward with his street car while or after crossing the intersection. Mayer v. Louisville Railway Company, 192 Ky. 371, 233 S. W. 785; Louisville Railway Company v. Birdwell, 189 Ky. 424, 224 S. W. 1065; Louisville & Nashville Railroad Company v. Shaw's Adm'x, 264 Ky. 321, 94 S. W. (2d) 642.

There is merit in appellant's contention that the court should have given an instruction embodying appel-

lant's rights and appellee's duties under the "last clear chance" doctrine, which has so frequently been written in and elaborated upon in many of our opinions, some quite recently. We note that appellants' charge was of general negligence.

It is clear that there was nothing to obstruct the motorman's view of the north side of Liberty street between his car and the Brooks car, a distance between the east side of Fourth and the Brooks' car of approximately 130 feet. He says he stopped his car in a space of not more than 25 feet after he discovered that the Brooks' car was about to pull on the track. Brooks says one wheel of his car was on the track at a time when the street car was still on the east side of Fourth Street, at least he describes it as "still there," where he saw it and the red light the first time he looked.

Under these circumstances appellant, regardless of any negligence of appellant's agent, was entitled to have submitted to the jury the question as to whether or not the motorman discovered, or by the exercise of ordinary care could have discovered, the perilous position in which appellant was placed, and by the exercise of ordinary care, with the means at hand, have avoided the injury.

We recently wrote in Mullins v. C., N. & C. Railway Company, 253 Ky. 156, 68 S. W. (2d) 790, 792:

"In many cases we have written, even where the plaintiff out of sheer hardihood or recklessness placed himself in a position of peril, he is not outside the pale and the protection of the humanitarian doctrine which Mrs. Mullins invokes in this case. Whitman's Adm'r v. Louisville Railway Company, 134 Ky. 6, 119 S. W. 165. The test is, without regard as to how she came in peril, Did the defendant's motorman in charge of the street car see, or could he by due care, have seen her peril and negligently fail to avoid injuring her? If so, the defendant is liable." See also Cumberland Grocery Company v. Hewlett, 231 Ky. 702, 22 S. W. (2d) 97; Williams Motor Company v. Howard, 251 Ky. 557, 65 S. W. (2d) 688; Pedigo v. Osborne, 279 Ky. 85, 129 S. W. (2d) 996; Kelly v. Marshall's Adm'r, 274 Ky. 666, 120 S. W. (2d) 142.

The proof indicates that after the motorman discov-

ered the perilous position of the Brooks' car, he did everything with the means at hand to avoid the injury, but one of the questions which appellant is entitled to have the jury pass on, is whether or not the motorman could have, by the exercise of ordinary care, discovered the perilous position of the car in which appellant was riding, in time to use means at hand to avoid the collision.

For the one reason above indicated the judgment is reversed, with directions to grant appellant a new trial and for the court to incorporate in appropriate instructions appellants' rights, and appellee's duties as defined under the "last clear chance" rule, if the facts be the same as here presented, and for trial consistent herewith.

Judgment reversed.