CASE 12.—ACTION BY MARY SCHWAB AGAINST THE LOUIS-
VILLE, HENDERSON & ST. LOUIS RY. CO., ETC.,
FOR DAMAGES FOR PERSONAL INJURIES.—No-
vember 8.

# L., H. & St. L. Ry. Co. v. Schwab

Appeal from Jefferson Circuit Court; Common
Pleas Branch; Third Division.

MATT O'DOHERTY, Judge.

Judgment for plaintiff, defendant appeals—Re-
versed.

1. Jury—Selection and Drawing of Panel.—Ky. Stats., 1903, sec-
tions 2241, provides that the jury commissioners shall take
the last returned assessor's books and from it select intelli-
gent and impartial citizens to the number therein prescribed;
that each name so selected shall be by them written on a
slip of paper, and that each slip shall be by them inclosed
in a small case made of paper, and deposited in a revolving
drum or wheel; and that while so engaged in making the
jury list no person shall be permitted to be with them. Held,
That if jury commissioners did not themselves write the
names of the jurors on slips of paper and place them in the
cylinders or wheel, but merely checked off the names on the
assessor's book and authorized or requested two clerks of
the court to write the names checked off and place them in
the cylinders or wheel, the selection of the panel was bad,
as against a challenge to the array before trial, though it
be not made to appear that the challenging party was thereby
substantially prejudiced, in that the jurors so selected were
in any respect objectionable.

2. Evidence—Presumptions—Performance of Official Duty—Jury
Commissioners.—Jury commissioners are officers of the court,
and the presumption is that they did their duty; but this
presumption may be overcome by evidence that they did not.

3. Witnesses—Privilege of Witnesses.—Constitution section 11,
providing that no person shall be compelled to give evidence
against himself, applies in all cases where punishment may

be inflicted, and protects a jury commissioner in declining to testify as to violations of the statute prescribing the method of selection of jury panels, in that the commissioners authorized clerks of the court to perform acts which they themselves should have performed, since being an officer of the court, the willful violation of his duty would constitute a contempt, but does not protect the clerks of the court, since, as officers of the court, they have no duties to perform in the selection of juries, and are not otherwise punishable for such acts.

4. Trial—Right to Open and Close.—A carrier, sued for gross negligence, has not the burden of proof, entitling it to close, by admitting that plaintiff was a passenger and injured in a collision; such facts merely raising a presumption of ordinary negligence.

HELM & HELM for appellant, L., H. & St. L. Ry. Co.

FAIRLEIGH, STRAUS & FAIRLEIGH and GREENE & VAN-WINKLE for appellant, Louisville Ry. Co.

BENNETT H. YOUNG and MARION W. RIPY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Appellee, alleging that she was injured in a collision between a freight train operated by appellant Louisville, Henderson & St. Louis Railway Company and one of the cars of appellant Louisville Railway Company, caused by the negligence of the companies, brought this action to recover damages from each of them. A trial was had before a jury, and a verdict rendered against both appellants.

The principal error assigned by appellants is the failure of the trial court to sustain the motion made by them at the beginning of the trial to discharge the panel for misconduct of the jury commissioners in failing to select the jurors in the manner prescribed by the statute, "in that the commissioners did not

write the name of each juror on a slip of paper and place them in the drum wheel, but merely checked off names on the assessor's book and employed others not under oath to do the really important work of writing off the names and putting them in the wheel; the persons so employed not being under the direct supervision of the commissioners, who did not know whether they did the work assigned to them right or wrong.'' In support of this motion affidavits of the president and attorney of the railway company were filed. In these affidavits the parties making them did not assert that they had personal knowledge of the facts stated, but averred that they were informed and believed them to be true. After making the motion and filing the affidavits, appellants requested that Mr. Schuff, one of the jury commissioners, who was present in court, be sworn to testify concerning the action of the commissioners in selecting the jurors, and also produced and offered to have sworn Mark Ryan and Frank Dacher, clerks of the court. When Mr. Schuff was called, the trial judge said to him: ''You are a commissioner of this court, appointed by this court, or rather appointed by Judge Gordon, and I wish to say to you that you do not have to testify unless you choose. Do you desire to be sworn, Mr. Schuff?'' To which Mr. Schuff responded, ''No sir.'' The judge then said: ''You do not have to be sworn.'' To this statement counsel for appellants objected, and avowed that if Mr. Schuff was sworn ''he would state that he was one of the jury commissioners last appointed by the court; that he and the other commissioners attended at the time appointed for the purpose of selecting the jurors to be placed in the wheel drum; that they went over the assessor's book with a lead pencil, checking the names

L., H. & St. L. Ry. Co. v. Schwab.

of 8,000 men; that they then left the courthouse; that they did not write the names of any of the jurors on slips of paper, nor put said slips in cylinders, but this was done by two clerks of this court, namely Frank Dacher and Mark Ryan, who wrote the names on the slips and put the slips in the cylinders; that they did this in the absence of the jury commissioners; that the commission then reconvened and separated the cylinders, placing 2,000 in each wheel drum; that they did not know and had no means of knowing that the slips of paper upon which the names were placed contained the same names as those which they marked off on the assessor's book; that during the time that the commissioners were at work these clerks were also present; and, further, that Schuff would state that they only knew a very small per cent. of the names marked off by the commissioners, that they took no pains to ascertain the occupation or avocations of those jurors, and did not know whether they possessed the statutory qualifications of honesty, sobriety, and intelligence, and that they took no pains to ascertain whether they possessed them.''

Mr. Ryan was then called upon by counsel for appellants to testify, whereupon the judge said: ''If a clerk of this court interfered with the commissioners, he subjects himself to punishment.'' Then the following took place: ''Court: You are a deputy clerk of this court, Mr. Ryan? Ryan: Yes, sir. Court: Were you here as a deputy when the jury commissioners were appointed? Ryan: I think I was. Court: Now, the proposition is to have you sworn in this case. You have heard the avowal made by counsel herein, and the proposition is to have you testify in regard to these matters. I wish to say to you that it

is your privilege to testify or not as you please. Ryan: If it is left for me to elect, I decline to testify." The avowal was then made that if Mr. Ryan testified he would state "that he was requested by the commissioners last appointed by the court to select jurors to come into the place where they were, and to write off from the assessor's books the names of persons whom they indicated by a lead pencil mark, and that said commissioners did check off approximately, 8,000 names, and then left the courthouse; that then he (Ryan), who was a deputy clerk of the court, in connection with Frank Dacher, another deputy clerk, wrote these names from the assessor's books on separate slips of paper and placed them in cylinders; that this was done with this exception, that wherever he and Dacher thought the names marked off were men who were not properly qualified to act as jurors, they did not write their names on slips of paper or put those names in cylinders, but in each instance they made a little 'o,' indicating that they did not use those names selected by the commissioners; that Ryan would further state that the clerks were in the room at the time the commissioners were doing their work; that the commissioners were not in the room or in the courthouse, so far as he knows, at the time he and Dacher wrote off the names on slips of paper, nor at the time when they put them in the cylinders; that when the commissioners returned they did not take any pains whatever or make any effort to ascertain whether the names in the cylinders were the same names they had checked off."

Mr. Dacher was then called by counsel for appellants, who asked that he be sworn; but by permission of the court he declined to be sworn or answer questions, and an avowal was made that if required to

testify he would make the same statements in substance as that contained in the avowal made of what Ryan would say.

Ky. St. 1903, section 2241, provides in part that "the circuit judge of each county shall at the first regular term of circuit court therein after this act takes effect, and annually thereafter, appoint three intelligent and discreet housekeepers of the county, over twenty-one years of age, residing in different portions of the county, and having no action in court requiring the intervention of a jury, as jury commissioners for one year, who shall be sworn in open court to faithfully discharge their duty. They shall hold their meetings in some room to be designated by the judge, and while engaged in making the list of juries and selecting the names, writing and depositing or drawing them from the drum or wheel case, no person shall be permitted in said room with them. They shall take the last returned assessor's book of the county and from it carefully select from the intelligent, sober, discreet and impartial citizens, resident housekeepers in different portions of the county, over twenty-one years of age, the following number of names of such persons, to-wit: (then follows the number that shall be selected from each county, graded according to the population.) Each name so selected they shall write in plain handwriting on a small slip of paper, each slip of paper being as near the same size and appearance as practicable; and each slip with the name written thereon shall be by them enclosed in a small case made of paper or other material and deposited unsealed in the revolving drum or wheel case hereinafter provided for."

In answer to the argument made for appellants, it is said for appellee that the record does not show that

the substantial rights of appellants were prejudiced by the action of the court in overruling the challenge to the array; and it is further suggested that it was entirely proper that the judge should advise the jury commissioners and the clerks that they had the right to claim the privilege of not testifying, as, if they gave evidence sustaining the avowals made, they would subject themselves to punishment for contempt, and no person can be required to give testimony against himself. The record does not disclose that the members of the panel from which the jurors were selected to try the case were in any respect objectionable, and in this particular the substantial rights of appellants were not prejudiced by the rulings of the trial court; but, in a matter that strikes at the very foundation of our system of selecting jurors, we do not deem it material or necessary that any prejudicial error shall be made to appear, other than a substantial one committed in failing to select the juries in the manner pointed out in the statute. It is probable that the jurors selected to and that did try this particular case were men who possessed all the statutory qualifications; and it may also be conceded that they were entirely acceptable to counsel and parties on both sides. But back of this is the more important question that litigants have the unqualified right to demand that juries shall be selected in the manner prescribed in the statute, and in passing on this right the individual qualification of the juror or the fact that he may be entirely acceptable to the parties is not to be considered. If the contention of appellee was sound, the careful and elaborate scheme devised for selecting juries would be nullified, the statute would be a dead letter, and no inquiry could be made into the manner in which jurors were orig-

inally chosen, if those selected to try the particular case possessed the statutory qualifications and were personally satisfactory. The Legislature, in obedience to a popular demand that a radical change be made in the manner of selecting juries, after long delay and much discussion, enacted the statute now in force; and this court in more than one case has given to this law the sanction of its approval and declared that its efficiency shall not be impaired or destroyed by the failure of public officers to observe its requirements.

Thus, in Curtis v. Com., 23 Ky. Law Rep. 267, 62 S. W. 886, a motion was made to discharge the entire panel of petit jurors, because the names of the jurors were not drawn from the jury wheel as they should have been, but were selected from a list regularly summoned in a previous month. This being a criminal case, this court had no power to review the action of the trial court in overruling the challenge to the array, but in the course of the opinion said: "These men so selected may have been, and doubtless were, of the very best citizenship in the county; but they were not drawn impartially from the body of legally qualified jurymen of the county. The mode provided by law for the selection of qualified and impartial jurymen was ignored, and the jury were selected by the judge of the circuit court himself. This was clearly erroneous. He may have done this with the very best of motive, but it was not the method provided by law, and should not have been done." In Covington & Cincinnati Bridge Co. v. Smith, 25 Ky. Law Rep. 2292, 88 S. W. 440, in discussing this jury law, the court said: "The statutes quoted provide an elaborate system for the selection monthly in courts of continuous session of impartial

jurymen fresh from the body of the people. If these provisions are enforced, each litigant is guaranteed that the best effort possible has been made to secure for the trial of his case an impartial jury. It is not believed that the requirements in the statute in regard to the selection of juries would have been set forth with such minute particularity and detail, if it had been intended that the court might nullify the manifest intention of the Legislature by ignoring them.'' In Risner v. Com., 95 Ky. 539, 26 S. W. 388, 16 Ky. Law Rep. 84, the jury commissioners did not put in the wheel the number of names required, and the court said: ''While it is not made to directly or certainly appear that appellant was thereby substantially prejudiced, still he had the right to insist upon being tried by only a jury obtained according to the statute, which was passed for the purpose of securing fair and impartial jurors; and, to more effectually accomplish that end, the names of at least 200 persons should have been placed in the drum or wheel case. This provision cannot be disregarded in any substantial particular without defeating one of the principal purposes of the statute.'' Central Kentucky Asylum for the Insane v. Hauns, 21 Ky. Law Rep. 22, 50 S. W. 978, to which our attention is called by counsel for appellee, is not in point; nor is it in conflict with the authorities cited. There the objection to the manner in which the jury was selected was not made until after the trial was completed, and hence came too late to be available.

If the methods avowed to have been adopted in this case by the commissioners are upheld, all the safeguards thrown around the selection of juries will be virtually abolished, and the effort of the legislative department to improve and elevate the jury system a

failure. The juries are almost entirely composed of men selected by the commissioners, and this power confided to them cannot be delegated in whole or in part to others. No minor officers connected with the administration of justice have more important duties to perform than do the jury commissioners. Upon their judgment and discretion in the selection of intelligent, sober, discreet, and impartial citizens and housekeepers of the county depends in a large measure the pure and impartial administration of justice in the conduct of jury trials, and this valuable privilege ought not and will not be frittered away merely because delay or inconvenience to the court or litigants may result from sustaining a challenge to the array because of substantial irregularity in the selection of the juries. It is infinitely better that there should be some delay in the trial of cases or inconvenience suffered by individuals than that a statute intended to safeguard the rights of all litigants should be totally disregarded. If the mistake or irregularity was a minor one, we would not regard it as material; but, if the avowals made are true, the statute was violated in several substantial particulars. The provisions disregarded are not directory, but mandatory. They constitute the very substance and life of the law, and may not lightly be ignored or disobeyed. No fraud or improper purpose can be imputed to these commissioners, nor is it necessary that it should be. Doubtless they acted in good faith, but nevertheless in open disobedience of the law under which they were selected, and their conduct can neither be overlooked nor approved.

The jury commissioners are for the time being officers of the court, and the presumption is that they did their duty; but this presumption, like all

others, may be overcome by evidence that they did
not. But, if the rulings of the trial judge in admon-
ishing the commissioners and the clerks that they
need not testify and in suggesting to them that they
might subject themselvse to punishment for contempt
if they did so, were correct, it would be almost impos-
sible to ascertain whether or not commissioners in
the performance of their duties observed the law.
The statute does not provide any punishment that
may be imposed upon jury commissioners for dis-
obedience of the law, and it was scarcely necessary
that it should, as the statute prescribing their duties
is plain, and it contemplates that they shall be men
of intelligence and character. Being officers of the
court, charged with specific duties, a wilful violation
of them would be a contempt of court that would
render the commissioner amenable to punishment.
This being so, it was proper that the court should
have admonished Mr. Schuff that, if he testified to a
disregard of the law, he might subject himself to such
punishment within legal limits as the court might see
proper to administer. The provision found in section
11 of the Constitution, providing that no person
shall be ''compelled to give evidence against him-
self,'' applies in all cases in which punishment may
be inflicted, the privilege not being confined to stat-
utory offenses, and protected the commissioner in
declining to testify. Counselman v. Hitchcock, 142
U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110.

But this privilege did not extend to or protect Ryan
or Dacher. They violated no written law, and under
the circumstances were not guilty of contempt. As
officers of the court they had no duties to perform in
connection with the selection of the juries. In assist-
ing the commissioners, if they did so, they were

occupying the same relation as any other stranger, who might act upon their request and without intending to violate the law. Not being subject to punishment for contempt or otherwise, there is no reason why they should not be required to answer such reasonable and pertinent questions propounded by counsel making the motion as might be necessary to bring out fully the facts.

In addition to the error heretofore mentioned, appellants complain of the instructions of the court, insisting that they were erroneous and prejudicial. This assignment we do not deem it necessary to discuss, as the points made have been determined against appellants by this court in other cases and appeals growing out of the collision in which appellee was injured.

The Louisville City Railway Company further insists that it should have been permitted to assume the burden of proof, and therefore the right to conclude the argument before the jury; and this upon the ground that, having admitted the collision and that appellee was a passenger in its car at the time, it was necessary that it should explain away the presumption of negligence arising from these admissions. It is true that, when a passenger in custody of a common carrier is injured, the law presumes negligence on its part; but this presumption only goes to ordinary negligence. It will not be presumed that the carrier was guilty of gross negligence. It was sought in this case to recover for gross negligence, and therefore the burden was upon the plaintiff to show that the carrier was guilty of that degree of neglect. Southern Ry. in Ky. v. Steele, 28 Ky. Law Rep. 764, 90 S. W. 548; Id., 29 Ky. Law Rep. 690, 94 S. W. 653; Southern Ry. Co. in Ky. v. Lee, 30 Ky. Law Rep. 1360.

For the error mentioned, the judgment must be reversed; and upon request of appellants the court should require Ryan and Dacher to give evidence and answer such questions within their knowledge as may be necessary to fully disclose the manner in which the juries were selected by the commissioners, and if, from this evidence, it appears that the commissioners did not write the names of the jurors on slips of paper and place them in the cylinder and drum wheel, but merely checked off the names on the assessor's books, and authorized or requested Ryan and Dacher, or either of them, to write the names checked off and place them in the cylinder or wheel, the court will set aside the verdicts and judgments thereon and grant appellants a new trial; otherwise, they will be permitted to stand