## Kitchen v. Commonwealth.

(Decided Nov. 25, 1938.)

H. R. WILHOIT, D. V. KIBBEY and JOHN R. McGILL for appellant.

HUBERT MEREDITH, Attorney General, for the appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER— Reversing.

Appellant was indicted for carnally knowing a girl

over 12 and under 16 years of age against her will and consent. Upon trial he was convicted of detaining a woman against her will and his punishment fixed at three years confinement in the penitentiary. His alleged victim was Virginia Mayo, a girl lacking about three months of being 13 years of age at the time of the alleged crime, and the defendant was then a man about 60 years of age. He prosecutes this appeal, assigning eight errors made by the trial court as follows:

(1) The verdict was flagrantly against the evidence; (2) in refusing to peremptorily instruct the jury to acquit appellant; (3) the receiving of incompetent evidence offered by the Commonwealth and the rejecting of competent evidence offered by the appellant; (4) in overruling his demurrer to the indictment because it did not allege the crime was committed by force; (5) in allowing the Commonwealth to introduce evidence he used force against the girl when the indictment did not so charge; (6) in erroneously instructing the jury and failing to give the whole law of the case; (7) in overruling his motion to quash the indictment and refusing to discharge the panels of the grand jury and the trial jury because of irregularities in filling the jury wheel; (8) in permitting the attorney closing the argument for the Commonwealth to make an improper argument.

In order to dispose of all these grounds it will be necessary to give a brief resumé of the evidence. The Commonwealth's evidence was as follows: Appellant operated a small store at which the child's parents traded. This store immediately joined the home of Mrs. Gertie Vincent and the walls were so thin a conversation in the store could be heard in the Vincent home. On February 18, 1938, the prosecutrix returning home from school about 3:30 in the afternoon passed by Kitchen's store and he called her in to get some groceries to take home. When she was inside of the store, he took her by the arm and pulled her into a back wareroom where he laid her upon some feed sacks and had sexual intercourse with her. She said immediately after the act was finished appellant "showed me a pistol and said he would kill me and send me to the reform school if I didn't do it."

Mrs. Gertie Vincent testified she attempted to enter the store through the back door and finding it locked, she peeped through a window in attempting to learn

if appellant was in the store and saw him in the sexual act with the child. While the act was being committed, Virginia Mayo heard someone at the back door but she made no outcry, although she did tell Kitchen someone was at the door and he replied: "The person couldn't get in." After peeping through the window Mrs. Vincent started for help, passed several men near Kitchen's store and inquired of them the whereabouts of her son, John Paul, but never mentioned the occurrence to these men, but when John Paul came up, she did tell him what she had seen. While she was seeking help, she saw the child come from defendant's store with tears running down her cheeks and looking pale, but said nothing to Virginia. Later in the afternoon, accompanied by her daughter-in-law, Eunice Vincent, she went into Kitchen's store and told him what she had seen, and she said he put his hands over his head and said, "God forgive." The daughter-in-law corroborated Mrs. Vincent though she states Kitchen said, "God forgive me." The child's mother, Mrs. Mayo, says that when she did the family washing on Tuesday following the alleged mistreatment of the child she saw where the child's under clothes were smeared with blood and otherwise soiled. The child never mentioned this occurrence until Sunday immediately following, when Mrs. Vincent walked home from Sunday school with her and asked her about it. Even then she did not tell her parents and they were not informed about it until Mrs. Vincent told them some days later.

The appellant admitted the child entered his store in the afternoon in question, came up to the counter and when asked by him if she wanted anything replied in the negative, left his store and never returned. He is corroborated in this by Nora Lee Webb, Prudy Baker, Frances Stapleton and Genie Sparks, all of whom were in his store when the child entered and most of them remained there for more than an hour. He denied having touched the child or having any improper relations with her, or having said anything to her except to ask her what she wanted; also, he denied having asked divine foregiveness when Mrs. Vincent made the accusation against him.

It is apparent from the foregoing evidence there is no merit in appellant's contention the court should have peremptorily instructed the jury to acquit him; or that the verdict is flagrantly against the evidence. There

was some oral testimony concerning a written lease between appellant and Gertie Vincent covering the store building which was erroneously admitted, but this evidence was not at all prejudicial to appellant. There is no merit in appellant's contention the court erred in permitting Gertie Vincent and her daughter in law to testify appellant said, "God forgive," when she told him what she had seen through the window. Appellant's complaint that the court erroneously refused to let him prove certain statements alleged to have been made by Gertie Vincent to some of his witnesses tending to show she was unduly interested in his prosecution, is not well taken, for the reason, as pointed out by the trial judge, appellant had first to lay the grounds for contradiction and this he did not do. There is no merit in appellant's contention the indictment is defective in failing to allege the intercourse was accomplished by force. The third and last indictment returned against defendant, being the one upon which he was tried, charged the intercourse was against the will or consent of Virginia Mayo.

In Frierson v. Com., 175 Ky. 684, 194 S. W. 914, it is said:

"It would be idle in such an indictment to charge that the offense was committed forcibly and without the consent of the infant, as both averments would be only surplusage."

Appellant's objection to the evidence that he used force on the girl when the indictment did not charge the crime was committed forcibly cannot be sustained. The fact the indictment did not charge the act was committed by force does not prevent the Commonwealth from introducing proof force was exercised, as it may prove the manner in which the alleged crime was committed.

The detaining instruction under which appellant was convicted was not erroneous because it failed to state the detaining was unlawful. It follows verbatim the instruction on this crime appearing in Hobson, Blain and Caldwell Instructions to Juries, Sec. 830, which instruction has never been criticised by this court. The instruction under which appellant was convicted contains the words, "did feloniously detain Virginia Mayo against her will with intent to have carnal knowledge with her himself," and is not subject to criticism.

But the complaint made by appellant that the court

did not give the whole law of the case is well-founded. There were three indictments returned in this case, each being a continuance of the preceding. The first two indictments charge appellant with having carnal knowledge of this girl with her consent. And after they were returned, Doctors J. M. Rose, and C. W. McCleese made an examination of her at the instance of the County Judge and reported, by a sealed statement addressed to him, there had been no penetration and her hymen was not broken. It was not until after this report had been made by the doctors that the third indictment was returned which contained the allegation the crime was committed against the will of the girl. The evident purpose of this third indictment was to entitle the Commonwealth to an instruction on detaining a woman against her will, an offense denounced in Sec. 1158 of the Kentucky Statutes and is a lesser degree of rape, as denounced in Sec. 1154, which instruction the Commonwealth could not have obtained under an indictment charging the crime under section 1155, was with the consent of the girl. Blankenship v. Com., 234 Ky. 531, 28 S. W. (2d) 774.

The facts in this case are most unusual. While Kitchen was in the act of committing the alleged crime, the child heard someone at the back door of the store and informed him of that fact, whereupon he assured her whoever it was could not get in. The walls of the building were so thin these words of the child could have been heard by anyone at the door unless she had whispered them to Kitchen. It was testified this attack on Virginia Mayo occurred on Friday afternoon. She never mentioned it to her parents or anyone else until on the way home from Sunday School the following Sunday morning when Mrs. Vincent told Virginia about what she had seen and the girl admitted it. After gaining this confession from the child Mrs. Vincent did not communicate the fact to Virginia's parents and it was not until after Mrs. Vincent, herself, took the child before the grand jury that the parents received information of what had happened and then it came from Mrs. Vincent and not the child. These most unusual circumstances surrounding this alleged crime, coupled with the further fact the first indictment returned February 22nd, and the second February 28th, each charging the crime was committed with the consent of the child convinces us that an instruction should have been given on

attempted rape in view of the testimony of the two doctors at the trial there had been no penetration. It is the duty of the trial court in criminal cases to give the whole law of the case and in this instance the unusual facts justified an instruction on rape, attempted rape and detaining a woman against her will. Criminal Code of Practice, sections 262, 263; Moseley v. Com., 206 Ky. 173, 266 S. W. 1048; Blankenship v. Com., 234 Ky. 531, 28 S. W. (2d) 744. Attempted rape is a common law misdemeanor. Nider v. Com., 140 Ky. 684, 131 S. W. 1024, Ann. Cas. 1913E, 1246. This judgment must be reversed because the trial court did not give the entire law of the case.

On the day this case was finally called for trial, May 16, 1938, defendant filed his written motions to quash the indictment because when the Circuit Judge drew the grand jurors names from the wheel he failed to write them down as is provided by Sec. 2243, Kentucky Statutes; on the contrary the judge read the names drawn by him to the clerk and the deputy clerk of the court in an audible voice while various members of the bar were present in the court room and the names were written by the clerk or his deputy. This motion was supported by the affidavit of H. R. Wilhoit, one of the attorneys for Kitchen. On the same day a similar motion was made to discharge the entire panel of petit jurors which alleged the same irregularities in drawing their names from the wheel as accompanied the drawing of the grand jurors names therefrom. This motion was supported by a similar affidavit to that supporting the motion to quash the indictment and this affidavit was likewise signed by Mr. Wilhoit. The court overruled both motions and the appellant excepted. There being nothing in the record to controvert the two affidavits of Mr. Wilhoit in reference to drawing the grand and petit jurors from the wheel, we must accept the facts set out in the affidavits as true. Section 2243, Kentucky Statutes, especially directs the circuit judge to draw from the wheel the names of the grand jurors in open court and record the names upon paper and certify and sign it; immediately thereafter he will draw the names of the petit jurors, record their names on paper, certify and sign it. This section of the statutes was enacted by the Legislature so that no one but the circuit judge could know whose names had been drawn from the wheel to make up the next grand jury and petit jury to serve

in the circuit court. For the circuit judge to draw the names and then announce them to the clerk or deputy clerk in an audible voice and for the clerk or his deputy to record the names so announced by the circuit judge is a violation of Sec. 2243. The fact that good and true men may have returned the indictment against the appellant, and good and true men may have tried him, and while his substantial rights may not have been prejudiced by the manner the grand and petit jurors sitting on his case were drawn from the wheel, yet the statute was violated although innocently by the circuit judge, and the very bulwarks the Legislature built to make our jury system free from corrupting, or even suspicious, influences were torn down.

While Louisville, H. & St. L. Railway Company v. Schwab, 127 Ky. 82, 105 S. W. 110, 31 Ky. Law Rep. 1313, was a case of irregularities by the jury commissioners in filling the wheel, the following quotation from it is applicable to this case [page 112]:

"The record does not disclose that the members of the panel from which the jurors were selected to try the case were in any respect objectionable, and in this particular the substantial rights of appellants were not prejudiced by the rulings of the trial court; but, in the matter that strikes at the very foundation of our system of selecting jurors, we do not deem it material or necessary that any prejudicial error shall be made to appear, other than a substantial one committed in failing to select the juries in the manner pointed out in the statute. It is probable that the jurors selected to and that did try this particular case were men who possessed all the statutory qualifications; and it may also be conceded that they were entirely acceptable to counsel and parties on both sides. But back of this is the more important question that litigants have the unqualified right to demand that juries shall be selected in the manner prescribed in the statute, and in passing on this right the individual qualification of the juror or the fact that he may be entirely acceptable to the parties is not to be considered. If the contention of appellee was sound, the careful and elaborate scheme devised for selecting juries would be nullified, the statute would be a dead letter, and no inquiry could be made into the manner in which jurors were originally chosen, if those

selected to try the particular case possessed the statutory qualifications and were personally satisfactory."

While we are not reversing this judgment on the ground there was a violation of Sec. 2243 in drawing the names of the grand and petit jurors from the wheel who sat in appellant's case, yet we are directing the judge of the Carter Circuit Court to follow strictly Sec. 2243 of the Statutes in drawing petit and grand jurors from the wheel and to have this indictment remanded to a grand jury whose names are properly drawn from the wheel and recorded by him as provided by Sec. 2243, Kentucky Statutes, and to see that the names of the petit jurors who try appellant are likewise drawn from the wheel and are recorded by him. We cannot let this flagrant violation of the statute relative to drawing jurors from the wheel pass unnoticed because other circuit judges in the state may become lax in following the provisions of Sec. 2243.

Thomas D. Yates was employed to assist in the prosecution, and in closing the argument for the Commonwealth, stated to the jury:

"What pleasure would it be to me to put Ennis Kitchen in the penitentiary if I thought he was innocent—a boy that I was raised up with, my neighbor, and I have been his lawyer and been his friend all these years and he knows it—what pleasure could I get out of that. Why gentlemen of the jury, a man with any heart or conscience that would be a party to sending an innocent man to the penitentiary doesn't deserve to practice law or do anything. If I didn't believe this man guilty of this charge, him or any of his people wouldn't have enough money to get me to get up here and tell you so and he knows I could have been on the same side with Wilhoit (appellant's counsel) if I had wanted to have been."

Proper objection was made to this argument at the time and the court merely ruled: "That is not competent," as is shown by the bill of exceptions. While the court sustained the objection of appellant and ruled the argument was not competent, he failed to admonish the jury not to consider it and the court likewise failed to admonish the attorney to keep within the record and confine himself to a proper argument of the case. When an

objection is made to such an improper argument as this was, a ruling by the court that it is incompetent when not followed by an admonition to the jury not to consider the argument, also, a strong admonition to the attorney to stay within the record and to make only proper argument, little good is accomplished and appellant's objection might as well have been overruled, since the jury's attention was not called to the impropriety of the argument and the ruling of the court did not withdraw the improper argument from the minds of the jury in a clear and convincing manner. Other objections to other parts of Mr. Yates' argument were made and preserved in the bill of exceptions, but they were not, in our opinion, well taken.

This judgment is reversed because the trial court failed to give the whole law of the case and on another trial if the evidence is substantially the same, the court will instruct on rape, attempted rape and detaining a woman against her will.

The judgment is reversed for proceedings consistent with this opinion.