## Cincinnati, Newport & Covington Ry. Co. v. Cooper.

Oct. 6, 1939.

Rodney G. Bryson, Judge.

Stephens L. Blakely, Galvin & Tracy and A. J. Daly for appellant.

James E. Quill and J. A. Kiely for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellee sought recovery of appellant, a street railway company in the sum of $3090, of which total $40 was for medical services, and $50 for damage to wearing

apparel, the remainder for pain and suffering. Her claim was that while she was riding in an automobile, owned by a neighbor and driven by a friend, one of appellant's street cars ran headlong into the automobile at a point where appellant's tracks crossed a street in Fort Mitchell to the Dixie Highway.

The accident occurred about 4 p. m. on September 4, 1937, and appellee alleged that it was due to the negligence and carelessness of the operator of the street car; that by reason of the collision she suffered painful injuries to her back and other parts of her body, and underwent much mental anguish and suffering, and the damage to clothing.

Appellant denied in apt language the allegations of the petition, and affirmatively plead that such injuries as appellee claimed to have suffered were occasioned by her own negligence, and the negligence of the driver of the car in which she was riding. A controverting reply completed the issues.

Upon the calling of the case for trial, appellant challenged the array, panel and venire; moved the court to discharge the panel and array, and further moved the court to direct the jury commissioners to assemble, empty the jury wheel and to refill the same in the manner as is directed by statute. This challenge, motion to discharge and require a refilling of the wheel, was supported by affidavit in which it was alleged that of the thirty persons appearing for jury service at the current term, the names of seventeen persons called and presented did not appear on the last returned assessor's list, thus the manner of selection of jurors was not in accord with Section 2241, Kentucky Statutes.

The Court overruled appellant's motion and denied its request for a refilling of the wheel, but sua sponte discharged thirteen (of the seventeen) jurors whose names admittedly did not show on the "last returned assessor's list," and at once drew from the wheel twenty slips having thereon the names of that number of jurors. When these names were canvassed it showed that of the twenty thus drawn, the names of eight did not appear on the assessor's list, and these eight prospectives were excused, leaving twelve of the additional twenty drawn in open court, thus apparently leaving the array composed of twenty-nine jurors, whose names did appear on the proper list.

The appellant renewed its objection to the array, panel, venire and jury, on the same grounds it had based its first objection, and the motion and request were overruled. Thereupon appellant moved for a continuance, basing that motion on the ground of irregularity in the selection of the jurors, and this motion was overruled.

The trial proceeded, and upon conclusion of the testimony on behalf of appellee, and again at the close of the case, appellant moved for a peremptory. These motions were overruled. Upon submission the jury returned a verdict finding for appellant in the sum of $1,000.

The court overruled motion for a new trial and entered judgment in accord with the verdict. While the motion for a new trial was supported by seven or more grounds, appellant's brief urges the following grounds as constituting reversible errors:

"(a) In compelling appellant to go to trial before a jury selected from a list improperly drawn and empanneled, because same was not drawn and empanneled in conformity with Section 2241 et seq., Kentucky Statutes.

"(b) In refusing appellant's request for a peremptory instruction, since from all the proof appellee was, as a matter of law, guilty of contributory negligence.

"(c) The verdict was contrary to the evidence and against the law of the case.

"(d) In giving faulty instructions, and,

"(e) The damages awarded are excessive."

The appellee was married at 9 o'clock on the morning of September 4, the day of the accident. After the ceremony the bride and groom, together with a number of friends and relatives, returned to the home of appellee's mother, in or near Fort Mitchell, where they remained until about 3:30 p. m., the party then leaving to return to Covington, as appellee says, for the purpose of taking some of the wedding cake to the groom's grandmother.

The party left in a car belonging to Mr. Baudendister, and was driven by Neal McKeon, another friend.

There were two other persons in the front seat of the car with McKeon. The bride and groom and two other friends or relatives occupied the rear seat. The party left the home of appellee's mother, driving up Thompson Avenue to Brice and then to Burdsall, at which point the matchine turned into Burdsall, which crosses the appellant's double tracks in going on to Dixie Highway, running from Lexington to Covington.

Burdsall Avenue crosses the appellant's tracks at exact right angle. The tracks for several hundred yards in each direction from Burdsall, run parallel with Dixie Highway, and is free from curves or obstructions to the end of the line. From the evidence and a blue print in the record, it appears that the street car, in making the trip from Covington to the end of the line, goes out on the southbound track; makes the loop near Horse Branch and makes the return trip on the northbound track, the north rail of which is said to be 10 feet and 8 inches from the edge of the highway, which is described as a four lane highway, about 40 feet in width, with a slight shoulder on the side next to the highway.

At the time of the accident, the travel on the highway was unusually heavy, made so, as the proof shows, by the movement of some army trucks from one point to another. One of the street cars of appellant had been traveling south. The operator had completed the trip from Covington to the end of the line, made his loop, and was traveling toward Covington on the northbound track at the time of the colision. What happened may be best described in the words of the witnesses. Appellee testified:

> "I was at my mother's home preparing to accompany the wedding party to Jimmie's home to take her a piece of the wedding cake. We went up Thompson Avenue to Brice, then Burdsall, which is the end of Brice."

She then describes where and how the various members of the party were seated in the car, and continues:

> "He pulled down upon the car tracks, (north track); we could see in one direction to the end of the line. There was no street car coming in either direction. I saw the car leave the end of the line, three squares away, and stop at Pleasant Ridge.

which is one square away, to take on a passenger, and during all this time the auto was on the north bound track. I told Neal McKeon that I thought the street car was going to hit us; before we could do anything the motorman threw up his hands and plowed into us and drug us 60 feet and hit a pole."

On cross-examination she says that McKeon was familiar with the crossing and the movement of cars over appellant's tracks. She could not say whether McKeon saw the street car after it left the end of the line or not. It was clearly shown that there were no obstructions between the point of accident and the loop.

She further says the auto slowed up before reaching the tracks, but she did not think it made a stop. She also said there was no machine following the car in which she was riding; that when McKeon stopped on the north track the automobile had gotten almost across the track. Appellee did not think there was room enough between the north rail of the track and the south edge of the highway to accommodate the machine. The space in question was shown by another witness to be 10 feet, 8 inches to the shoulder. The width of the shoulder is not given. The automobile was 15 feet long and appellee says: "If we had gotten off the track we would have been hit by a machine," meaning that if McKeon had then driven on to the highway, his machine would have collided with another on the Dixie Highway. Appellee also said that it would take the street car all of two minutes to run from the loop or end of the line to the Burdsall crossing.

William Myer operated a grocery store on the south side of Dixie Highway near the Burdsall crossing. At the time of the accident he was standing in his store looking out on the highway. He noticed the wedding party coming out toward the crossing, and saw the automobile pull up on the crossing and slow down to make a left-hand turn. This witness looked up the track and saw the street car about "a square away," just after it had passed a crossing. "I watched the car until it got about 50 feet of the machine which was standing on the car track, and that was the front end of the car I seen, and within 20 feet of the automobile was when I could see the car again, because the corner of the building blocked my view of the frontage in between there, and then I saw the car smash headlong into the car

which the bridal party was in, and drug it down the tracks about 60 feet.''

This witness says, ''the traffic in the highway was unusually heavy; it would have been impossible to pull out on the highway, cars running right in back of the other, coming to and from Covington.''

On cross examination he said that the automobile was on the north track for ''the length of time it took for the street car to run at least a block.'' He also said there were no billboards or other obstructions preventing one on the Burdsall crossing from seeing a car approaching from the end of the line, a distance of approximately 1000 feet, and that the street cars made ''a good deal of noise'' and that he heard this one as it approached the crossing as much as a block and a half away.

McKeon, who was the driver of the car, testified that he slowed up and put the car in gear before he proceeded on to the street car track. He stopped on the track to let traffic pass on the highway. He says he could see ''quite a distance'' toward the end of the car line, but did not see a street car until he pulled on the street car tracks.

He said that when he first saw the street car it was past Pleasant Ridge, toward the end of the line. When asked on direct examination what he did when he saw the street car, he replied: ''There was not a thing I could do but wait until the traffic passed to try to get on the highway.''

On cross examination he said he was familiar with the running of the street cars. He said before he drove on the track he looked both ways and came ''pretty near to a stop.'' He further testified that he looked to the right as he came to the northbound track and saw the car approaching and then stopped on the track.

George Flerlage was the operator of the car. He left the south end of the line at 4:05; was due at Burdsall at 4:07. He says he did not stop his car at Pleasant Ridge; that he had ten or twelve passengers and was running about 25 miles per hour. He says the automobile pulled onto the track when he was about 50 feet from the crossing; that he rang his gong, and at once put on his emergency. He says he did not see the machine until it pulled up on the north track. He also

says he kept a lookout, particularly after leaving Pleasant Ridge to stop.

William Smith was a passenger on the street car; got on at the end of the line. He saw the automobile driving up just before it got on the track. It did not stop. He says the street car was 60 to 65 feet from the crossing when he first saw the automobile. He heard the motorman ring his bell and slow down.

Another passenger says he first saw the automobile up Burdsall Avenue about 100 feet away from the tracks. The auto went on the track and stopped, when the street car was about 50 feet away. "The motorman hit the gong one time, and applied the brakes and the car slid into the machine."

From a casual reading of the evidence as related supra, it is obvious that appellee and the driver of the auto were negligent and failed to use ordinary care for their safety, and the safety of their fellow passengers. From the testimony of appellee it is evident that she saw the approaching street car, at least for a distance of 300 feet and more. She had time to make some move for her own safety, but, as we read the proof, she waited until the street car was almost upon the automobile and then only suggested to McKeon that she thought the street car was going to hit them.

The driver, from his own testimony, saw the approaching car at a sufficient distance to have permitted the backing of his car off the northbound track. However this may be, we are of the opinion that the motorman on the car, if appellee's testimony be considered by the jury, owed the duty of exercising ordinary care to discover the peril of appellee, and to exercise the same care with the means at his command to avoid the accident, under our well established "last clear chance" rule.

It is true, according to his version, that he exercised care and used means to avoid the accident, but he insists that the auto came upon the track when his car was about 50 to 60 feet distant.

We are of the opinion that the court below should have held that the appellee was guilty of contributory negligence, Owen Motor Freight Lines v. Russell's 'Adm'r, 260 Ky. 795, 86 S. W. (2d) 708, and should have so indicated, thus eliminating from the instructions any

reference to the question of negligence on the part of appellee or the driver of the automobile. We said in Pedigo v. Osborne, 279 Ky. 85, 129 S. W. (2d) 996, 1000:

> "Although it is clear that Osborne was guilty of negligence, it was the duty of the driver of the Pedigo car to use ordinary care to discover the peril of appellee and to use such means as he had at his command to avoid the collision. Lieberman v. McLaughlin, 233 Ky. 763, 26 S. W. (2d) 753."

Reference may be had also to Robinson Transfer Company v. Turner, 244 Ky. 181, 50 S. W. (2d) 546; McGraw v. Ayers, 248 Ky. 166, 58 S. W. (2d) 378.

The conclusion reached above obviates the necessity of considering the contention that the verdict is excessive, or that the jury panel was improperly drawn. It would serve no good purpose to discuss the former, and it is probable that the second situation will not arise on another trial. It is suggested that on this point reference be had to the recent case of Kitchen v. Commonwealth, 275 Ky. 564, 122 S. W. (2d) 121, which cites approvingly Louisville, H. & St. L. Railway Company v. Schwab, 127 Ky. 82, 105 S. W. 110, 31 Ky. Law Rep. 1313.

Judgment reversed with directions to grant appellant a new trial and for proceedings consistent herewith.