## Carter v. Commonwealth.

January 21, 1949.

Sandusky & Krueger for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Henry Carter has been convicted of the crime of unlawfully detaining a woman against her will with intent to have carnal knowledge of her, and his punishment has been fixed at confinement in the penitentiary for a term of three years. He seeks reversal of the judgment on two grounds; (1) He was entitled to a new trial because of newly discovered evidence; and (2) the court failed to give the whole law of the case.

Geneva Moberly, a young woman 24 years of age, arrived at Mt. Vernon, Kentucky, on a bus about midnight August 2, 1947, from Hamilton, Ohio, where she

was employed. Her parents lived on Copper Creek in Rockcastle County, about 16 miles from Mt. Vernon, and she was returning home to visit them over the week end. Finding no one at the bus station to meet her, she walked to Main Street looking for a taxi. She testified that a man sitting in a truck parked at the curb asked her if she was looking for a taxi. He told her that it was primary election day, and all the taxi drivers were busy or drunk. He said his name was Carter, and he agreed to take her to her father's home in his truck for $2. A few miles out of Mt. Vernon he began making improper advances which she resisted, and at the town of Brodhead she asked him to stop the truck and let her out. He drove through Brodhead without stopping, and about one-half mile beyond the town struck her. She became unconscious, and when she regained consciousness she was out of the truck on the side of the road badly injured. Her face was cut and lacerated and her knees and hands were scraped and scratched as if she had fallen from the truck onto the road. She walked to the home of Charlie Bussel, which was near by, and upon seeing her condition he called the town marshal, Bennett Brown. Bussel and Brown took her to a physician in Brodhead, and she was then placed in an ambulance and taken to a hospital in Stanford where she remained seven days. Several stitches were required to close the wounds in her face. At the trial Miss Moberly positively identified appellant as the man in the truck. Two police officers of Mt. Vernon testified that they saw appellant in his truck at the bus station when the bus arrived about midnight on August 2. Miss Moberly's brother and another witness testified that they examined Carter's truck on the morning of August 3, and found what appeared to be dried drops of blood on the right side between the bottom of the door and the running board.

Appellant's defense was an alibi. He testified that he was with Ott Kirby in the room where the ballots of the primary election were being counted until 10 p. m. George Renner, Kirby's father-in-law, came to the place where the ballots were being counted and told Kirby that Hazel Kirby was very ill at the Kirby home. She was Ott Kirby's daughter. Appellant took Kirby to the latter's home, which was about four miles from Mt. Vernon. Later he took Hazel Kirby, Ott Kirby, Mrs.

Ott Kirby and George Payne in his truck to Mt. Vernon. Hazel and her mother rode in the cab with him, and Ott Kirby and Payne rode in the bed of the truck. They went to the office of Dr. Griffith, but it was closed and they then went to the home of Dr. James Pennington, arriving there about 11:30 p. m. While Hazel Kirby and her father and mother were in Dr. Pennington's home appellant and Payne drove to the bus station where appellant got a sandwich and a cup of coffee. He testified that he saw at the station the two police officers who had testified for the Commonwealth. He returned to Dr. Pennington's home and drove the sick girl, her parents and George Payne to the Kirby home, arriving there about 12:30 a. m. He remained at the Kirby home the remainder of the night. He is corroborated in this respect by four members of the Kirby family, George Payne, George Renner, and one or two other witnesses. Dr. Pennington testified that Hazel Kirby was brought to his home in Henry Carter's truck about 11:30 p. m., August 2, and that she remained there about thirty minutes. The Commonwealth introduced in rebuttal two police officers of Mt. Vernon, Clifford Pittman and McKinley Arnold, who testified that they saw Ott Kirby and some of his family looking for Dr. Griffith's office on the evening of August 2. They talked with the Kirbys at the truck. This was about 7:30 p. m., and about four hours before they saw appellant in his truck at the bus station. Both appellant and Ott Kirby testified that they saw and talked with the two officers when they were looking for Dr. Griffith's office, but they fixed the time as about 11 or 11:30 p. m. On cross-examination Ott Kirby was positive that this conversation did not occur at 7:30 p. m. George Payne heard the conversation with the two officers. He said that it took place just before Hazel Kirby was taken to Dr. Pennington's home, and he fixed the time as about 11 p. m. Hazel Kirby also testified concerning the conversation.

Appellant's motion and grounds for a new trial was overruled on January 17, 1948. On January 31, 1948, he filed a supplemental motion and grounds for a new trial supported by his own affidavit and the affidavits of W. W. Sowder, Minnie Sowder, Ab Barnes, C. W. Phillips and Irvin Smith. W. W. Sowder stated in his affidavit that he was jailer of Rockcastle County, and that he

saw and talked with a person whom he remembered as Ott Kirby, who was making inquiry as to a doctor to attend his daughter, and that the conversation occurred on the sidewalk in front of the jail on the night of August 2, 1947, at about 11 o'clock. He was told that Kirby's daughter was in a truck which was parked immediately across the street. Mrs. Sowder and Ab Barnes stated that they were sitting on the porch in front of the jail and saw a man walk across the street from a parked truck and engage W. W. Sowder, the jailer, in conversation. He returned to the truck, and the truck proceeded up Main Street in the direction of the office of Dr. George Griffith. C. W. Phillips and Irvin Smith stated in a joint affidavit that they were on the sidewalk near the courthouse and jail about 11 p. m. on August 2, and observed the truck of Henry Carter in front of the jail. They saw Ott Kirby in conversation with W. W. Sowder, the jailer. The court overruled appellant's supplemental motion and grounds for a new trial, and we think the ruling was proper on two grounds; first, due diligence in discovering the evidence was not shown, and, second, the evidence was cumulative. In Traynor v. Commonwealth, 149 Ky. 462, 149 S. W. 904, this court said: "The rule is that a new trial will not be granted on account of newly discovered evidence which is merely cumulative, and would not have had a decisive effect on the result of the trial if it had been introduced."

And further: "The granting of new trials upon newly discovered evidence is not to be encouraged; for, if such was the case, parties would not be diligent in hunting up their witnesses before the trial, and the setting aside of verdicts would make the administration of justice uncertain. Ordinarily, the diligence that will find a witness after a trial will find him before the trial, if proper precaution is taken."

Appellant was indicted in August, 1947, and was tried on January 16, 1948. His defense was an alibi, and it was important that he establish his whereabouts during the night of August 2. The slightest effort on his part would have disclosed the evidence he claims was discovered after the trial. He knew Ott Kirby, his chief witness, had inquired of various persons concerning a doctor after he arrived in Mt. Vernon from the Kirby home. He was in the truck only a few feet away when

the jailer had the conversation with Kirby. The newly discovered evidence places appellant in Mt. Vernon at 11 p. m. with Ott Kirby, when the latter was looking for a doctor for his daughter, and contradicts the testimony of the two police officers, but is to the same effect as the testimony of several witnesses who were introduced by appellant. The newly discovered evidence is not such as we believe would have had a decisive influence on the jury, or would have caused it to render a verdict other than the one returned. As was said in Williams v. Commonwealth, 276 Ky. 754, 125 S. W. 2d 221, 225: "A new trial should be granted on the ground of newly discovered evidence only where the evidence is of such decisive character as to render a different result reasonably certain."

Appellant's complaint of the instructions cannot be sustained. They followed almost literally, except for names and dates, the instructions found in Stanley on Instructions, section 966, and approved in Kitchen v. Commonwealth, 275 Ky. 564, 122 S. W. 2d 121. The instructions presented the entire law of the case.

The judgment is affirmed.