## Alva West & Co. v. Corwin.
(Decided Nov. 9, 1937.)

**558**

COLLINS & COLLINS for appellant.

M. HARGETT and McMAHON, CORWIN, LANDIS & MARKHAM for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

The appeal is from a $1,786 judgment for personal injuries.

The evidence is as follows: At the time of the accident, which occurred about 9 o'clock on the morning of April 2, 1933, appellee, Robert K. Corwin, James Dickinson, Jack O'Brien, Jack Randall, Joseph Schaeffer, and Horace McKee Huffman were riding from Dartmouth College, Hanover, N. H., to Dayton, Ohio, to spend their vacations. The machine in which they were riding was a Ford touring car, and belonged to James Dickinson. Dickinson was driving, and next to him on the front seat was appellee Corwin, and next to Corwin was Jack O'Brien. The other boys were on the rear seat. While traveling in a southern direction on route

No. 42, the Ford touring car collided with a truck owned by appellant at a point 20 or 25 miles south of Cleveland. At the place of the collision the highway was 34 feet wide, and was divided into three lanes, consisting of a 14-foot strip of asphalt in the center, and a strip of concrete 10 feet wide on each side. The concrete strips were white and the asphalt strip dark. On each side of the highway were signs on which were painted the words "Keep to the Right—Use Center for Passing Only." The center of the asphalt lane was not marked. According to the evidence of appellee and the other occupants of the car, Dickinson was driving south on the west concrete lane when they overtook Miss Ann Marie Toth, who was driving a Ford sedan in the same direction at the rate of 20 or 25 miles an hour. Without putting out her hand, or giving any signal of her intention, she slowed down to 12 or 15 miles an hour to turn into a private passway intersecting the highway on the west. She was then near the right curve. Dickinson slowed down and, after blowing his horn, turned into the asphalt strip in order to pass the Toth car. Miss Toth then suddenly turned to the right to enter the driveway. The truck was then about 100 yards away and coming very rapidly. Dickinson pulled to the right to avoid the truck, and grazed the back fender of the Toth car. In order not to damage the car he pulled to the left slightly, and before he could pull over to the right again the Ford car came in contact with the truck. When the collision occurred, the left wheels of the truck were in the asphalt lane from 2 to 6 feet. According to the driver of the truck, he was driving north in the center of the concrete strip on the east side of the highway, when he observed the car in which the boys were riding approaching from the north on the concrete strip on the west side of the highway at a very fast rate of speed and some distance behind the Toth car. As Dickinson approached the Toth car in the same lane, the Toth car slackened its speed to turn off to the right. Dickinson then turned his car to the left to avoid the Toth car. In doing this he lost control and the car was caused to ricochet diagonally across the road and come in contact with the truck in the center of the east concrete strip, and there was nothing that the driver could do to avoid the collision.

The original petition contained the following:

"Plaintiff says that on the 2nd day of April,

1933, at or about 9:15 o'clock A. M. he was riding in a Ford automobile driven by James Dickinson southwardly on said Pike, that at a point approximately three (3) miles north of Brunswick, Medina County, Ohio, said Dickinson turned said automobile to his left or East into said black asphalt strip of pavement from the western strip of white concrete pavement on which he had been driving in order to pass another automobile also proceeding southwardly on said western strip of concrete, that just as Dickinson's automobile was passing it said other automobile swerved to its left or east, suddenly and without signal, striking the right side of Dickinson's automobile and knocking it into the center of said road where it was struck head on with great force and violence by a truck owned by defendant.''

It is argued that the foregoing allegation shows that the collision was not due to any negligence on the part of the driver of the truck, but was due wholly and entirely to the negligence of Dickinson and the driver of the Toth car immediately in front of him. If the petition contained nothing else, there might be some merit in the contention, but it goes further and alleges that the collision and injuries received by appellee were caused solely, directly, and proximately by the carelessness and negligence of the driver of the truck and then specifies several acts of negligence. The most that can be said is that the petition presents a case of concurrent acts of negligence. As said in 4 Blashfield's Cyclopedia of Automobile Law and Practice (Permanent Ed.) section 2551, ''where several causes combine to produce injuries a person is not relieved from liability because he is responsible for only one of them. It is sufficient that his negligence is an efficient cause without which the injury would not have resulted and that the other cause is not attributable to the person injured. In other words there may be more than one proximate cause for the same injury, and the mere fact that some other cause co-operates with the negligence of the defendant to produce the injury for which suit is brought does not relieve him from liability.'' It is also the rule that the fact that the negligence of the driver of the car in which the guest is riding is a concurring cause and directly contributes to the collision will not preclude the guest's recovery from the owner of the

other car, as a person cannot be relieved from the consequences of his own negligence on the ground that the concurring negligence of another contributed with his negligence to cause the injury. 4 Blashfield's Cyclopedia of Automobile Law and Practice (Permanent Ed.) section 2573; Denker v. Lowe, 192 Ky. 660, 234 S. W. 294; Consolidated Coach Corporation v. Hopkins' Adm'r, 238 Ky. 136, 37 S. W. (2d) 1; Wallis v. Illinois C. R. Co., 247 Ky. 70, 56 S. W. (2d) 715. It is only where the driver's negligence is the sole proximate cause of the guest's injuries that such negligence will defeat a recovery against a third person. 4 Blashfield's Cyclopedia of Automobile Law and Practice (Permanent Ed.) sec 2572. Cox's Adm'r v. Cincinnati, N. O. & T. P. R. Co., 238 Ky. 312, 37 S. W. (2d) 859.

But the point is made that all the boys were engaged in a joint enterprise, and the accident was due to the negligence of Dickinson, whose negligence was imputable to appellee. In support of this position it is argued that the boys were all going on the same journey, that with the exception of appellee they took turns about driving the car and also helped to buy the gasoline. To constitute a joint enterprise within the rule that the negligence of one party is imputable to the others, persons riding together in an automobile must have a community of interest in the object and purpose of the undertaking, and an equal right to direct and govern the movement and conduct of each other in respect thereto. Dorris v. Stevens' Adm'r, 266 Ky. 602, 99 S. W. (2d) 755; Campbell v. Campbell, 104 Vt. 468, 162 A. 379, 85 A. L R. 626. It must not be overlooked that the car belonged to Dickinson, and was being driven by him at the time of the collision. While the boys may have been on a common mission, there is no evidence whatever that they were jointly controlling the movements of the car, or that appellee had any right, or exercised any control over the operation of the car. In the circumstances, the journey was not a joint enterprise, and Dickinson's negligence, if any, was not attributable to appellee. Bailey v. Parker, 34 Ohio App. 207, 170 N. E. 607.

By instruction No. 1 the jury was told that it was the duty of the driver of the truck "to keep within the boundary of the said east line, and not drive upon or over any part of the 14 foot middle lane of darker material," and to find for the plaintiff if they believed

from the evidence that a failure of that duty was the proximate cause of the accident.

By instruction No. 4 the jury was told that the driver, Dickinson, "in making a left turn for the purpose of passing the Ford sedan in front of him, had the right to the use of the whole center lane in passing said Ford sedan." The case was tried under the law of Ohio, and the instructions are assailed on the ground that they do not accord with the law of that state as pleaded and proved. Though the statute was changed a few months after the accident so as to provide that upon a highway divided into an odd number of lanes a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle, or in preparation for a left turn, or unless such center lane is at the time allocated exclusively to traffic moving in the direction the vehicle is proceeding, and is signposted or marked to give notice of such allocation, section 6310-17, Ohio Gen. Code (110 Ohio Laws, p. 136), the statute in force at the time of the accident, read as follows:

"Vehicles shall keep to the right side of the road or highway except when necessary to turn to the left in crossing the road or highway or in overtaking and passing another vehicle; provided that, in passing a vehicle going in the same direction such passing shall be made as close to the right hand side of the road or highway as practicable."

Inasmuch as the truck at the time of the accident was not passing a vehicle going in the same direction, the proviso respecting the duty to keep as close to the right-hand side of the road or highway as practicable does not apply, and the propriety of the instructions turns on the proper construction of that part of the section preceding the proviso and not upon any principle of the common law. While it may be true that, at the time the statute was enacted, practically all the roads in the state of Ohio were one-lane roads, we must interpret the statute as written and not give it a different meaning because the number of lanes has been increased. The language is "shall keep to the right side of the road or highway." In our opinion this does not mean that vehicles shall keep to the extreme right of the road, but the requirement of the statute is met by driving to the right of the center line of the road or

highway. Evidently the Legislature of Ohio had the same view of the statute or it would not have passed section 6310-17c of the Ohio General Code, providing a different rule as to highways divided into an odd number of lanes. Nor do we think the presence of signs along the highway on which were painted the words, "Keep to the right—Use Center for passing only," had the effect of changing the rule or imposing a different duty on the motorist; it not being shown that the signs were placed there by any officials having authority to prescribe regulations in addition to those fixed by the statute. It follows that the instructions were erroneous.

But we must go further. It is clear that, unless the truck was to the left of the center line of the highway, there was no negligence on the part of the driver of the truck that may be regarded as the proximate cause of the accident. A careful reading of the evidence discloses that all the witnesses said the wheels of the truck were straddling the line separating the concrete from the asphalt lane, and no witness placed the left wheels of the truck over on the asphalt lane at a greater distance than six feet from the concrete strip on the right. As the asphalt lane was 14 feet wide, it results that the left wheels of the truck were to the right of the center line of the asphalt lane. That being true, there was no evidence of negligence, and appellant's motion for a peremptory instruction should have been sustained.

This conclusion makes it unnecessary to determine whether or not the verdict is excessive.

Judgment reversed, and cause remanded for a new trial not inconsistent with this opinion.

Whole court sitting.