## Cincinnati N. & C. Ry. Co. v. Renaker.

May 20, 1941.

Galvin & Tracy, Stephens L. Blakely and Arthur J. Daly for appellant.

William E. Wehrman for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Appellant has appealed from a judgment of $10,365 rendered against it in the Kenton circuit court in favor of appellee for personal injury damages resulting from a collision between an automobile driven by appellee and a trolley bus owned by appellant and operated by its employee. The grounds urged for reversal are, (1) the evidence is insufficient to take the case to the jury, or to sustain the verdict; and (2) the instructions given the jury are prejudicially erroneous.

The accident occurred in the city of Covington on a curve on James Avenue just a few feet north of Thirtieth Street, which in fact is a continuation of James Avenue. Thirtieth Street runs in a northeasterly direction in a rainbow like curve until it reaches the peak of the curve and from that point on the street is known as James Avenue and runs in a southwesterly direction from the peak of the curve, and in fact constitutes one and the same street. The accident occurred on the 26th day of November, 1938. The streets were covered with ice, and very slippery and dangerous for the operation of motor vehicles.

At the time of or just previous to the accident, appellee was driving east or in a northeasterly direction

on Thirtieth Street and appellant's motor bus was approaching from the opposite direction on that portion of the street known as James Avenue, thus placing appellee's vehicle just south of the peak of the curve and appellant's vehicle just north of that point. When appellee reached the peak of the curve on her side of the street, the east side, her automobile suddenly skidded to the west side of the street, stopping against or on the curb directly in the path of appellant's motor bus and the two vehicles collided, resulting in appellee's injuries.

The court submitted the case to the jury under what is known as the last clear chance doctrine. We will consider the evidence from that viewpoint.

Appellee testified that when she was some distance south of the curve or point of collision she saw appellant's bus approaching from the opposite direction north of the curve more than one square away. She further said:

"I kept driving and when I came to the driveway I took a skid to the left and hit the—that is the car skidded to the left and hit the curb, which killed my engine. Of course, I realized the bus was coming, but that didn't frighten me, I felt sure that he would stop. He was quite a distance away when I began skidding."

"Q. Do you know the speed of your car? A. Yes.

"Q. Tell the Jury and the Court. A. I was driving 15 miles a hour, no more. I was not a fast driver.

"Q. After you were back against the curb did you observe the trolley bus at that time? A. I certainly did.

"Q. Where was it then? A. More than 100 feet from me. I was stalled against the curb.

"Q. What, if anything, did you do? A. Of course, I wasn't excited then. I looked to the left of me to—I wanted to back up the road in order to get out of the way of the bus. When I turned around I saw the bus was upon me. I realized what was coming and grabbed for my horn and blew my horn and threw my hands to my face and yelled 'Oh Catherine.' The crash was terrible."

Martha Kohler, who was a passenger on appellant's motor bus at the time of the accident, testified that she was sitting on the driver's side of the bus and saw the accident. She said she saw appellee's car about one block away on the right side of the road, and that the car started skidding at about opposite the intersection of the driveway and she heard a horn blowing, and said, "We kept coming and then we crashed." She was asked: "How far away was the trolley bus, if you know, when the Renaker car was in the path of the trolley bus on that side?" (Meaning the bus's side of the street.) She answered: "I would say from about one hundred and twenty-five to one hundred and fifty feet." She further said that the bus was running at about the regular speed and did not slow up any until it came up to appellee's car.

Al Feder, the motorman or operator of appellant's bus who was called as a witness for appellee, testified that he saw appellee's car approaching the curve some distance before it reached the peak of the curve or the point where it skidded, and he noticed that she was on her right side of the street and in a place of safety. He proceeded about twenty-five feet further and on reaching or nearing the peak of the curve he then directed his attention to his right-of-way or side of the street, and did not see appellee's car again until it suddenly skidded in front of the motor bus. He said he applied the air brakes and emergency brake and used all the means he possibly could to stop the bus and to avoid colliding with appellee's car. In describing the sudden appearance of appellee's car the witness testified:

"Q. Could you tell where they came from? A. Looked like they came from Heaven to me.

"Q. Suddenly appeared? A. Yes, sir."

Emory S. Karrick, another passenger on the trolley bus, testified that appellee's car started to skid at the intersection of the driveway and skidded across the street directly in front of the trolley coach and it crashed into the trolley bus, and at that time the operator of the trolley bus had slowed the speed down to about five miles an hour and stopped instantly at the impact.

Ray Lipscomb, also a passenger on the trolley bus, testified:

"Well—while we was riding south, I happened to look up and toward the south and saw a Dodge coupe, it was, standing east and west about around sixty feet, I imagine, from the bus. The motorman seen the car in his way and put on his brakes and the bus skidded and ran into the machine."

The appellant introduced Edward McHugh, who was also a passenger on the trolley bus. He testified that immediately prior to the collision the trolley bus was traveling about fifteen miles an hour, and the driver hollered, "Oh, Oh." He further said he looked up and saw the coupe directly in front of the bus on the west curve; that the operator put on his brake right away and jumped out, stopping at the time he hit the machine.

Also, Joffre B'Hymer, a passenger on the trolley bus, testified that immediately prior to the collision the trolley bus was traveling at about fifteen miles an hour. He also saw appellee's car approaching at a moderate rate of speed and saw it skid and swerve directly in front of the trolley bus and the bus hit it directly in the side and stopped immediately after striking it; that at the time appellee's car skidded across the street and came to rest against the curb the trolley bus was about five to eight feet away. Later, however, he said the two vehicles were "A very few feet apart," but further stated that when the automobile began to skid the trolley bus was approximately fifty yards away, or approximately one hundred and fifty feet distance for the bus to travel while appellee's car was skidding across the street, and according to evidence of the witnesses who saw the car start skidding, it skidded across the street very quickly.

We have seen that the evidence is conflicting as to the distance appellant's bus was from the point of the collision when appellee's car first appeared in the path of the bus. It may be conceded that appellant is favored with the preponderance of the evidence, since it appears from the testimony of the majority of the witnesses that appellee's car suddenly appeared in the path of the bus when the latter was only a few feet away, the distance being such that it was impossible for the operator of the bus to stop his vehicle before it collided with appellee's car. But, be that as it may, we have the positive evidence of appellee and her companion, Mrs. Rassche, that when appellee's car stopped against the

curb in the path of the bus the latter was more than one hundred feet away and, according to practically all the evidence, the bus was running at a speed of approximately fifteen miles per hour. Appellee stated, however, that the bus was "coming fast" but she did not attempt to fix the rate of speed of miles per hour, but merely expressed a conclusion that it was coming fast. With the exception of this apparent conclusion of appellee, all the evidence tends to show that the bus was running at about fifteen, or possibly between fifteen and twenty miles per hour. We have the question of whether or not the bus running at the most less than twenty miles per hour could, by the exercise of ordinary care and with the means at the hands of the operator, have been stopped within a distance of one hundred feet or less. One of the witnesses, and possibly two, stated that the bus skidded, which was plausible, in view of the condition of the streets, but this is contrary to the evidence of the motorman who does not claim that the bus skidded, nor does he claim that his brakes were defective. He stated that when he saw the Renaker car in the path on his side of the street he stopped his car and applied the emergency and air brakes, and stopped it almost instantly.

It may be true that the motorman of the bus did not discover appellee's car in his path until he was within a few feet of it—"Six or eight feet," as stated by one of the witnesses. But, according to the evidence of appellee and Miss Kohler, appellee's car was in plain view of the motorman and in his path while the bus was more than one hundred feet away and he could have discovered same by the exercise of ordinary care. It results, therefore, that if the motorman exercised the care incumbent upon him he saw, or by the exercise of ordinary care he could have seen, appellee's car as soon as it appeared in his path. Hence, the decisive questions involved are, (a) the distance the bus was from appellee's car when it appeared in the path of the bus, and (b) whether or not the motorman, while in the exercise of ordinary care with the means at his hands, could have stopped the bus in time to have avoided the collision.

In Brooks v. New Albany & L. Electric Ry. Corporation, 280 Ky. 157, 132 S. W. (2d) 777, the salient facts and law applicable thereto are concisely stated in Syllabus 7 to that opinion in this language:

"Where defendant's street car motorman had an

unobstructed view of plaintiff's automobile for approximately 130 feet before collision and plaintiff's husband, who was driving automobile, testified that one of its wheels was on street car track when street car was approximately 130 feet away, and general negligence of defendant was charged, whether motorman, by ordinary care, could have discovered plaintiff's perilous position in time to have avoided injury by exercising means within his control should have been submitted to jury.''

And, in the body of that opinion the court said:

''The proof indicates that after the motorman discovered the perilous position of the Brooks' car, he did everything with the means at hand to avoid the injury, but one of the questions which appellant is entitled to have the jury pass on, is whether or not the motorman could have, by the exercise of ordinary care, discovered the perilous position of the car in which appellant was riding, in time to use means at hand to avoid the collision.''

In the case at bar appellee and two other witnesses testified that appellant's bus was between one hundred and one hundred and fifty feet from the point of collision when appellee's car entered the path of the bus. In the case, supra, however, a street car was involved instead of a motor bus; still, in view of the speed appellant's motor bus was running, together with the evidence of the motorman that it did not skid when he applied the brakes but stopped almost instantly, we think the evidence in the case at bar presents a question for the jury to decide whether or not the operator of appellant's bus, by the exercise of ordinary care, discovered or could have discovered appellee's perilous position in time to use the means at hand to avoid the collision.

The next complaint is directed to instruction number 1 which reads:

''You will find for the defendant, Cincinnati, Newport and Covington Street Railway Company, unless you believe from the evidence in this case that the driver in charge of defendant's trolley bus failed to exercise ordinary care with the means at his command to avoid striking plaintiff's automobile and injuring her, after he discovered, or by the exercise of ordinary care, could have discovered her peril,

and that by such failure, if any, she was injured, in which event you will find for the plaintiff, Jessie Renaker.''

In Mullins v. Cincinnati, N. & C. Ry. Co., 253 Ky. 156, 68 S. W. (2d) 790, 792, wherein a ''last clear chance'' question was involved, this court directed that upon another trial of that case the trial court would instruct the jury in form and substance of the instruction given in the present case. This form of instruction was also approved by this court in Button v. Pinckley, 253 Ky. 323, 69 S. W. (2d) 347; Cumberland Grocery Company v. Hewlett, 231 Ky. 702, 22 S. W. (2d) 97.

The criticism offered to the instruction by counsel for appellant is that it leaves too much room for the jury to guess or speculate as to when appellee's peril began; that is, the jury might have thought that since the streets were icy and slippery the operator of appellant's bus should have anticipated that she might skid from her side of the street into the path of the bus, and hence she was in peril from the time the operator of the bus discovered her on the street, although she was clear of his path. We do not think the instruction is susceptible to the criticism offered. The operator of the bus testified that when he last saw appellee's car before it appeared in his path, she was on her side of the street and in a place of safety. We think it would be a rather far-fetched conclusion to assume that any reasonably intelligent minded jury would have construed the instruction to mean that appellee was in peril while she was on her right side of the street and clear of the path of the bus. We think the jury understood that appellee's peril began when she entered the path of the bus.

Finding no error prejudicial to the substantial rights of appellant, the judgment is affirmed.