## Weintraub v. Cincinnati, N. & C. Ry. Co.

Oct. 24, 1944.

Morris Weintraub in pro. per.
Odis W. Bertelsman for appellee.

Opinion of the Court by Morris, Commissioner— Reversing.

Appellant, personal representative of the estate of Clarence Cain, sued appellee and its bus driver for damages to his estate, it being charged that Cain met his death and his car was damaged by reason of the negligence of appellee in the operation of one of its passenger vehicles, operated by William Moss. Issue was completed by answer in denial and plea of contributory negligence. Upon completion of appellant's testimony the court sustained appellee's motion for a directed verdict and judgment was entered accordingly. On appeal it is contended by appellant that the proof was sufficient to carry the case to the jury.

Per stipulation it was admitted that Cain met his death about 7:15 A. M., November 23, 1942, by "being thrown from his automobile following a collision between the automobile and bus," the impact resulting in a basal skull fracture; that the bus was owned by appellee and operated by its servant, and that the accident occurred in Campbell County on what is known as Central Bridge, crossing from Cincinnati, Ohio, to Newport, Kentucky.

Proof shows that Cain, about twenty-six years of age, a resident of Norwood, Ohio, had on the day previous been on a hunting trip in Kentucky, and early on the morning of the 23d started to Cincinnati, where he was employed. The proof also shows that on the particular morning it was raining "pretty hard."

The bridge is something over 1,000 feet long. The approach from Cincinnati is slightly up-grade for a short distance, then level for a distance of something over 200 feet, and from that point slopes on a 3 per cent downgrade until it reaches the Newport entrance. The floor is made of wooden planks; the width provided for vehicular travel is approximately 23 feet; within this space are the north and south bound street car tracks, 5 2-10 gauge, the outer rails being 2 feet from the railings. There are no curves in the bridge. It was clearly shown that when rain covered the driveway it would cause a slippery condition, as was the case on the morning of the accident. At the time of and just prior to the accident the only vehicles shown to have been on the bridge were appellee's bus and Cain's automobile.

Cain was traveling northward toward Cincinnati;

the bus southward toward Newport. Cain was alone in his car; the occupants of the bus were the driver and two passengers, one of whom testified. The proof, necessarily limited, tended to show that Cain was operating his car at a speed of approximately 40 miles per hour, the bus going at approximately 25 miles per hour until it slowed down when about 15 feet of the car. There is no argument but that from the time the driver and the passenger saw Cain's car, it was on the wrong side of the driveway and the bus on its right side, as was the situation at the time of the impact.

Moss, the bus driver, introduced by plaintiff, had been driving a bus for appellee for eighteen months, and had made a minimum of three round trips over the bridge each day. He was perfectly familiar with the bridge, and said that when it rained the driveway was slippery, and when in that condition required careful driving, though he had never seen an accident as a result of a vehicle being caught in the street car rails, but had seen them "slip in and out." Moss said when one reached the level he could "see all the way down to the toll house" on the Newport side, a distance of about 900 feet. He said he saw Cain on his side of the bridge "at least three hundred feet" away. Cain's lights were on and the automobile was in the street car rails, and he was "wig-wagging from one side to the other; he was trying to get out of the rails," he said the lights were "shimmering," just as the passenger witness had described it. He was asked: "You want to say to the jury that you saw this man, 300 feet away who was caught in the street car tracks, on the left side of the bridge as you were going over, and who was trying to get out of the rails?" Ans: "That is the way it appeared to me." He added, however, that it did not seem to him that Cain had lost control of his car until the bus was within 15 feet of it at which time, and for the first time, according to the passenger witness, Cain had succeeded in getting his car wheels out of the tracks, turned slightly left and the bus struck the car on its side. The passenger could not say that there was any attempt to stop the bus at any time, but thought that the bus had slowed down within 15 feet of the car to a speed of about 15 miles, though the driver of the bus made no claim of an effort to stop. The testifying passenger said that he was sitting on the first seat back of the bus driver, and he saw the Cain car on its wrong side, for a distance of

much more than 300 feet; his lights were on and were "shimmering" and it seemed like he was caught in the street car tracks. It may be said that the testimony of the passenger witness did not materially differ from that of Moss.

In brief for appellee it is argued that the court found as a matter of law that Cain's negligence was the sole cause of the injury, and further that the bus driver was not shown to have been guilty of any negligence. This contention is urged because the proof showed that Cain was on his wrong side, and driving at a speed of 40 miles per hour, never slackened his speed, and Moss "tried to stop." It is true that Cain was on the wrong side of the driveway, and the witness judged the speed of the approaching car to be about 40 miles per hour, but these facts did not relieve the driver of the bus of the duty of using means at his command to avoid the apparent danger to Cain when he saw that he was in trouble with his car at a distance of 300 feet, and according to proof could have seen the car and its predicament for a much greater distance.

The "last clear chance" rule is in effect in this jurisdiction, and where it becomes applicable under the facts the antecedent negligence of the injured party becomes the nonimportant factor. Cases cited in Thomas v. Boklage, 293 Ky. 804, 170 S. W. 2d 348. The rule, together with recital of duties of the person causing the injuries under the circumstances shown, is so well established that reference to only a few cases will suffice. Pedigo v. Osborne, 279 Ky. 85, 129 S. W. 2d 996; Cincinnati N. & C. R. Co. v. Renaker, 287 Ky. 338, 153 S. W. 2d 906; Ramsey v. Sharpley, 294 Ky. 286, 171 S. W. 2d 427. The facts here justified the application of the rule.

Counsel contends that the court correctly gave peremptory, because here there was a failure of appellant to prove that after Cain's peril was discovered the driver of the bus could, with the means at hand, have stopped the bus in time to have avoided the collision. Thornton v. Louisville & N. R. Co., 70 S. W. 53, 24 Ky. Law Rep. 854; Kentucky Traction & Terminal Co. v. Brackett, 210 Ky. 756, 276 S. W. 828. The rule thus announced is inapplicable here. In the first place the driver of the bus, as far as his or other evidence is concerned, made no effort to stop his vehicle. He does not say he even slowed down; the testifying passenger says he did not stop,

though when within 15 feet of the Cain car he reduced his speed from 25 to 15 miles per hour, "but was still moving." It may be noted that while Moss says he saw Cain's car in the tracks, and "shimmying" at a distance of 300 feet away, and "he was wig-wagging out of the rails; he had not got out of the rails," he undertakes to make it appear that he did not discover Cain's peril until he was within 15 feet of the bus, when it appeared to him that Cain had lost control of his car.

Counsel contends that under the law it was only the duty of Moss to make an effort to stop when he was within 15 feet of Cain's car, when he discovered he had "lost control of his car." Under the last clear chance doctrine the rule goes further. It was the duty of Moss to employ the means at his command to avoid the injury, and this duty began when Cain's peril might have been discovered. Coburn v. Louisville & N. R. Co., 295 Ky. 530, 174 S. W. 2d 775. One of the elements of negligence to be submitted to the jury in "last clear chance" cases is whether or not the bus driver, by the exercise of ordinary care, could have discovered the perilous position of the approaching car in time to use the means at command to avoid the collision. Brooks v. New Albany &· L. Electric R. Corp., 280 Ky. 157, 132 S. W. 2d 777. So in Cincinnati N. & C. R. Co. v. Renaker, 287 Ky. 388, 153 S. W. 2d 906, 908, where we said, "It may be true that the motorman of the bus did not discover appellee's car in his path until he was within a few feet of it—'Six or eight feet', as stated by one of the witnesses," but ·according to other evidence appellee's car was in plain view of the motorman and in his path while the bus was more than 100 feet away and he could have discovered the peril by the exercise of ordinary care.

Counsel for appellee relies somewhat on the Brackett case, supra. We had occasion to refer to and review that case in Cincinnati, N. & C. R. Co. v. England, 253 Ky. 86, 68 S. W. 2d 783, 784, 786, distinguishing the facts in the two cases. The facts in the England case were not analogous to the facts in the Brackett case, but are so to those in this case. We pointed out that the accident occurred in the city street of Bellevue, where the appellant "owed to all co-users of [the street] a constant lookout duty and it must be here held answerable if it breached that duty, or, that is to say, if by the exercise of ordinary care the motorman·could and should have discovered that the plaintiff was in peril in time to have avoided

injuring him by use of the means he had at hand, but failed in [that] duty.'' The criticism was to an instruction which submitted to the jury its duty if it found from the evidence that plaintiff was guilty of contributory negligence, and if they should so find, then if they believed the motorman in charge of the street car ''perceived his (plaintiff's) danger, or could by ordinary care perceive the same and could have prevented the same by (the exercise of) ordinary care, and failed to do so, whereby the injury happened, then you will find for the plaintiff.'' We held the instruction substantially good, saying: ''The question here presented by the evidence was not whether the street car could be, by the use of available means, stopped * * * but was whether or not appellant's motorman negligently waited too long to apply the means at hand to stop his car after he discovered or should have discovered plaintiff's peril by a proper discharge of the lookout duty owing him.'' Mullins v. Cincinnati, N. & C. R. Co. 253 Ky. 156, 68 S. W. 2d 790.

Under the facts presented, and the authority of the cases cited, the court should have submitted to the jury the question as to whether or not the driver of the bus failed to exercise ordinary care for the safety of plaintiff after he discovered or could have discovered the perilous position of the Cain automobile. In the Brackett case it was shown that the motorman when he saw the automobile come upon the car track and ''must have known that the occupants * * * were in peril,'' put his car into emergency and ''did everything possible to stop his car and avoid striking the automobile.'' It was under those circumstances we said that the burden was on plaintiff to establish negligence, or incumbent upon him to show that the bus driver could, with the means at hand, have stopped the bus in time to have averted the danger. We have no such case here.

Judgment reversed with directions to grant appellant a new trial consistent with this opinion.