**Josephine ROSE, Adm'x of Refus Rose, Appellant,**

v.

**T. E. VASSEUR, Appellee.**

**Josephine ROSE, Adm'x of Refus Rose, Appellant,**

v.

**Stanley VINSON, Jr., Appellee.**

**Marcus Milford WALKER, Appellant,**

v.

**Stanley VINSON, Jr. and T. E. Vasseur, Appellees.**

Court of Appeals of Kentucky.

Jan. 30, 1959.

C. E. Gordon, Malcolm Boaz, Mayfield, for Rose.

Francis T. Goheen, Henry Jack Wilson, Mayfield, for Walker.

F. B. Martin, Mayfield, Adrian H. Terrell, Paducah, for appellees.

STANLEY, Commissioner.

A tractor-trailer truck belonging to T. E. Vasseur and driven by his employee, Stanley Vinson, Jr., collided with a small truck owned and driven by Marcus M. Walker on highway No. 303, about one and one-half miles south of Mayfield on November 2, 1955. Refus Rose, Walker's employee, who was riding with him, was killed and Walker was injured. Separate suits for damages against Vasseur and Vinson were consolidated for trial. The court directed a verdict for the defendants at the conclusion of plaintiffs' evidence. They appeal.

The highway was worn blacktop. It had been raining but there was little or no evidence that the road was unusually slippery. The highway was straight and the visibility good. When Walker drove over the crest of a hill at about 50 mph he saw a milk truck going in the same northerly direction 500 or 600 feet away slow down, practically to a stop, and start to turn left into a driveway. The road was about three per cent down grade to this point and practically level beyond. Walker also saw the defendants' truck coming when it was 400 or 500 feet the other side of the driveway into which the milk truck was going to turn.

We summarize Walker's further testimony. He applied his brakes, and his car "turned sideways in the middle of the highway—maybe not completely square but nearly that way—and I began flipping the steering wheel trying to get straightened up." The ~~car~~ _truck_ didn't immediately slow down but kept sliding. It "crisscrossed back and forth across the highway out of control from the crest of the hill" until "I finally got it under control." Asked how far it slid, he answered, "During intervals I come all the way down the hill until I was in fifty or twenty-five feet of it [milk truck] until I got it under control where I could go either way I wanted to, and the milk truck was on my right and the Vasseur truck coming and I couldn't get back on my side, so I decided to take the ditch." He did so about 20 feet from the point of collision. Walker testified that his car was in plain view of the Vasseur driver at all times and it kept coming on without slowing down, so far as he could tell, until just before the impact. Then, "It appeared to me that he [the driver] was turning the steering wheel towards me in the ditch." The last Walker saw "it was at about a forty-five degree angle coming toward me." The defendants' truck struck the right corner or wheel of the plaintiff's, Walker's, ~~car~~ _truck_ while it was still moving along the ditch and berm of the highway and drove it backward.

The driver of the milk truck testified he had signaled his intention to turn into the driveway. Through his rear view mirror he saw Walker's ~~car~~ _truck_ skidding from one side of the road to the other and saw the defendants' truck coming in the opposite direction. It never left its side of the road, at least it did not before it passed the witness' milk truck just before the collision. The witness estimated the Vasseur truck was going 40 mph when it passed him. When he heard the impact, his truck had turned into the driveway, which was around 20 feet north of the point.

The defendant, Vasseur, called by the plaintiffs as a witness on cross-examination, testified that his tractor-trailer had six wheels equipped with air brakes, and later in the day of the accident he had observed marks on the road showing application of the brakes several feet before the collision.

Thus, the evidence is to the effect that when the plaintiff's car truck got out of control, it was straight ahead and clearly within view of the defendants' driver for some 800 or 1,000 feet. The driver came on and struck Walker's car, which was then on the berm and in the ditch. The defendants' truck had then passed the milk truck, and it had turned into the driveway behind the defendants' truck. According to Walker, instead of veering toward the center of the road, Vinson veered to the right toward him.

■ It seems to us that as a matter of law Walker must be regarded as negligent. Hunt v. Whitlock's Adm'r, 259 Ky. 286, 82 S.W.2d 364; Hewitt's Adm'r v. Central Truckaway System, 302 Ky. 459, 194 S.W.2d 999. It is true that skidding of an automobile on a slippery road is not of itself evidence of negligence of the driver; and that if the accident resulted from a condition of the road and not from any negligence of the driver, no liability results. But the condition of the road is a factor which must be taken into consideration and a slippery condition imposes the duty of exercising greater caution. Gilreath v. Blue & Gray Transportation Co., 269 Ky. 787, 108 S.W.2d 1002; Atlantic Greyhound Corporation v. Franklin, 301 Ky. 867, 192 S.W.2d 753. Ordinarily, when there is evidence that skidding was superinduced or accelerated by the driver, the question of negligence is for the jury. Clement Brothers Construction Co. v. Moore, Ky., 314 S.W.2d 526. When that is shown to have occurred, a question of negligence arises. Geller v. Geller, 314 Ky. 291, 234 S.W.2d 974. In this record

Walker's testimony does not show an unusually slippery or dangerous condition of the road. It does show that if he had had his car under reasonable control and had been driving at a reasonable rate of speed under the circumstances when he first saw the milk truck, he would not have so completely lost control of his car going down the hill for a distance of 500 feet before he felt compelled to go into the ditch on his wrong side of the road.

The question is resolved into whether the court properly directed a verdict for the defendants or whether he should have let the trial proceed under the doctrine of discovered peril or last clear chance.

■ The last clear chance rule, as it prevails in this jurisdiction in motor vehicle cases, applies where a negligent party's peril is not only actually discovered but also where it is reasonably obvious and should have been discovered by an approaching motorist in the exercise of ordinary care and diligence, as by observing a proper lookout duty. Upon this predicate of actual or constructive discovery of the other party's peril, in order to impose liability there must be evidence that affords reasonable belief that the motorist had time in the exercise of reasonable care with the means at his command to avoid the accident and injuring the person in peril. Swift & Co. v. Thompson's Adm'r, 308 Ky. 529, 214 S.W.2d 758; Kentucky & W. Va. Power Co. v. Lawson, Ky., 240 S.W.2d 843; Johnson v. J. E. Morris' Adm'x, Ky., 282 S.W.2d 835. In some cases the factor of ability or inability of the person in peril to physically escape from his perilous position may determine the defendant's responsibility. Saddler v. Parham, Ky., 249 S.W.2d 945.

We have several cases holding the last clear chance doctrine required a submission of the question of negligence to a jury where pedestrians were struck by motor vehicles. Other cases particularly applicable to the instant one may be noted.

In Cincinnati N. & C. Railway Co. v. Renaker, 287 Ky. 388, 153 S.W.2d 906, an automobile skidded on an icy street over against a curb in front of an oncoming trolley bus. There was evidence that the bus driver could have seen the skidding car for a distance of 125 to 150 feet ahead of him. We held under the circumstances and in view of the speed of the bus the question of the driver's negligence should have been submitted to the jury.

Weintraub v. Cincinnati N. & C. Railway Co., 299 Ky. 114, 184 S.W.2d 345, is much like the Renaker case. There was evidence that a bus driver saw that the wheels of an automobile appeared to be caught in street car rails on a bridge and that the motorist was having difficulty at a distance of 300 feet away. We held the bus driver's duty to avoid striking the car began when its peril might have been discovered and not when it was only 15 feet away when the bus driver testified he first discovered the motorist had lost control of his car.

In Lexington Roller Mills v. Thornberry, 314 Ky. 111, 234 S.W.2d 491, a motorist started around a large road construction truck without knowing there was another one directly in front of it as they approached the crest of a hill. When the motorist saw a truck coming over the crest in the opposite direction, she attempted to get back on her side of the road but was unable to do so. The defendant's truck came on and collided with her car. We held that the motorist was guilty of negligence as a matter of law in attempting to pass the highway construction truck, but that it was the duty of the defendant's driver to avoid the collision if he discovered the motorist's peril or should have discovered it in the exercise of ordinary care. Proper instructions for another trial were prepared by this court.

We conclude the case should have gone to the jury under the principle of discovered peril. The undisputed evidence established the fact that the plaintiff, Walker, had lost control of his car as he came down the road and had practically stopped on the wrong side, though Walker stated the car was on the berm and in the ditch. There is nothing to indicate Walker had a chance or opportunity to extricate himself from the situation in time to have left the path of defendants' truck. Although the deceased, Rose, was not chargeable with Walker's negligence (Alva West & Co. v. Corwin, 273 Ky. 557, 117 S.W.2d 192; Blashfield, Cyclopedia of Automobile Law, § 2498), Rose was in the same position of peril. If there was any negligence at all on the part of the driver of the defendants' tractor-trailer, that negligence was such as is defined in the doctrine of discovered or discoverable peril. The legal responsibility of the defendants as to both plaintiffs rests on the same duty and possible breach thereof. The defendants' responsibility to Rose was in the nature of that defined by the last clear chance doctrine, though it is not in name since the normally requisite element of contributory negligence was absent. Under the particular facts, the instruction in both cases upon the consolidated trial should have been in the form of a last clear chance instruction. If the evidence upon another joint trial should be substantially the same, we think the following instruction will be proper:

The court instructs the jury to find for the defendants, Vasseur and Vinson, unless you shall believe from the evidence that the defendant Vinson (driver of the defendant Vasseur's truck) saw, or by the exercise of ordinary care should have seen, a sufficient distance ahead, that Walker had lost control of his car and was in a position of peril and there was danger of a collision, and that by the exercise of ordinary care and the use of the means at his command, he (Vinson) could have stopped or changed the course of his truck and have avoided striking the Walker car and negligently failed so to do, in which event you will find for the plaintiffs.

The judgment is reversed for consistent proceedings.